SCHOOL DISTRICT OF BEVERLY *vs.* JAMES GELLER

Suffolk. April 2, 2001. - October 5, 2001.

Present (Sitting at Northampton): MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Arbitration,* Judicial review, Authority of arbitrator, School committee. *Education Reform Act. Statute,* Construction. *School and School Committee,* Arbitration, Termination of employment. *Public Employment,* Termination.

This court vacated a judgment of the Superior Court affirming an arbitration award reinstating a sixth grade teacher, who had been discharged under the provisions of G. L. c. 71, § 42, the Education Reform Act, for physically and verbally abusing his students on multiple occasions, and recommitted the matter to the arbitrator for further proceedings. [224]

CORDY, J., with whom MARSHALL, C.J., and SOSMAN, J., joined, was of the view that the arbitrator had exceeded the authority granted him by G. L. c. 71, § 42, when he substituted his own judgment as to proper discipline for that of the school district, after finding in substance that the district had sustained its burden of proving that the discharged teacher had engaged in "conduct unbecoming a teacher," one of the statutorily enumerated bases on which teachers with professional teacher status can be dismissed. [224-236]

IRELAND, J., with whom CORDY, J., joined, concurred in the result and would adopt the rationale of the Appeals Court in *School Dist. of Beverly* v. *Geller,* 50 Mass. App. Ct. 290, 294-297 (2000), noting that the arbitrator had exceeded his authority in reaching a conclusion that offended the strong public policy against the use of force by a teacher against a student. [236-239]

COWIN, J., joined by GREANEY and SPINA, JJ., dissented on the ground that the arbitrator did not exceed the scope of his authority by reinstating the discharged teacher without back pay (effectively ordering almost a one year suspension), because the arbitrator acted pursuant to the limits of G. L. c. 71, § 42, and because no "well-defined and dominant" public policy precluded an award of reinstatement in this case. [239-248]

CIVIL ACTION commenced in the Superior Court Department on September 3, 1997.

The case was heard by *Allan van Gestel,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Matthew D. Jones* for the defendant.

*Alan Kaplan* for the plaintiff.

The following submitted a brief for amici curiae:

*Michael J. Long & Rosann DiPietro* for Massachusetts Association of School Superintendents.

*Matthew D. Jones, Jeffrey Jacobsen, Donald J. Siegel, Elizabeth A. Sloane, & Wayne Soini* for Massachusetts Teachers Association/NEA & others.

BY THE COURT. The judgment of the Superior Court upholding the arbitration award is vacated.[1] The matter is recommitted to the arbitrator for further proceedings.

*So ordered.*

Separate opinions of Justice Cordy, with whom Chief Justice Marshall and Justice Sosman join; Justice Ireland, with whom Justice Cordy joins; and Justice Cowin, with whom Justice Greaney and Justice Spina join.

CORDY, J. (concurring, with whom Marshall, C.J., and Sosman, J., join). The school district of Beverly (district) appealed from the order of a Superior Court judge affirming an arbitration award reinstating James Geller, a sixth grade teacher, who had been discharged for physically and verbally abusing his students on multiple occasions. The district asserts that the award reinstating Geller was beyond the arbitrator's authority, contrary to the best interests of the students, and violative of a public policy prohibiting teachers from using physical force against students.

The Superior Court judge concluded that the arbitrator acted within the scope of his authority in ordering reinstatement. The Appeals Court reversed and vacated the arbitrator's award, holding that Geller's reinstatement offended "a clear and well defined public policy against the use of physical force, however

---

[1]We acknowledge an amicus brief filed by the Massachusetts Association of School Superintendents and one on behalf of Massachusetts Teachers Association/NEA; Massachusetts Federation of Teachers, AFT, AFL-CIO; Council 93, American Federation of State, County and Municipal Employees, AFL-CIO; and Massachusetts AFL-CIO.

slight, by a teacher against students." *School Dist. of Beverly* v. *Geller*, 50 Mass. App. Ct. 290, 297 (2000). This court granted Geller's application for further appellate review.

This is the first occasion in which we have considered the dismissal of a teacher under the provisions of G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44, the Education Reform Act of 1993.[1] I believe that the arbitrator exceeded the authority granted him by G. L. c. 71, § 42, when he substituted his own judgment as to proper discipline for that of the district, after finding in substance that the district had sustained its burden of proving that Geller had engaged in "conduct unbecoming a teacher," one of the statutorily enumerated bases on which teachers with professional teacher status can be dismissed.[2]

---

[1]The Education Reform Act of 1993, St. 1993, c. 71, made substantial changes to the governance structure and financing of the public school system in the Commonwealth. These changes were enacted to ensure: "(1) that each public school classroom provided the conditions for all pupils to engage fully in learning as an inherently meaningful and enjoyable activity without threats to their sense of security or self-esteem, (2) a consistent commitment of resources sufficient to provide a high quality public education to every child, (3) a deliberate process for establishing and achieving specific educational performance goals for every child, and (4) an effective mechanism for monitoring progress toward those goals and for holding educators accountable for their achievement." G. L. c. 69, § 1, as appearing in St. 1993, c. 71, § 27. G. L. c. 69, § 1A, as appearing in St. 1993, c. 71, § 28.

To further these goals, statutory changes were made to the statute governing teacher demotions and dismissals, G. L. c. 71, § 42. These changes included (1) transferring from school committees to school principals and superintendents the responsibility for dismissing teachers; (2) expanding the statutorily enumerated grounds for dismissal to include failure to satisfy teacher performance standards, and changing the catchall ground from other "good" cause to other "just" cause; (3) depoliticizing and streamlining the dismissal process by requiring that contested dismissals proceed directly to arbitration, where timelines for decisions and detailed statements of supporting reasons are mandated; (4) providing for limited rather than de novo review of dismissal decisions (as confirmed or not by arbitration) in the Superior Court; and (5) requiring arbitrators specifically to take into account the best interests of students and the need for the elevation of performance standards in determining whether a school district has met its burden of proving grounds for dismissal.

[2]I reach this conclusion based on our interpretation of the authority granted to the arbitrator by G. L. c. 71, § 42, an issue raised by the parties, and a task necessary to deciding the meaning and application of the statute to the facts of this case. However, although I agree with the district that the arbitrator exceeded his powers, I do so for reasons different from those adopted by the

1. *Factual background.* Geller was employed as a teacher in the district for over twenty years and had attained professional teacher status (formerly known as tenure), as defined in G. L. c. 71, § 41. He was dismissed in October, 1996, by the principal of the school in which he taught, with the approval of the superintendent of schools, for conduct unbecoming a teacher after it was determined that Geller had used physical force against students on three separate occasions. Geller appealed from his discharge to an arbitrator pursuant to G. L. c. 71, § 42, fourth par.

After conducting an evidentiary hearing the arbitrator found that Geller had engaged in the conduct alleged by the district and that "[p]ushing [students] against a wall and yelling in their faces is totally inappropriate."[3] He further found that Geller's

Appeals Court and argued by the district either here or in the courts below, but advanced and argued in the amicus briefs.

[3] The facts found by the arbitrator, as gleaned from the Appeals Court opinion, *School Dist. of Beverly* v. *Geller,* 50 Mass. App. Ct. 290, 291-292 (2000), are as follows:

1. In November, 1995, Geller yelled at his students in the classroom, making them feel uncomfortable. A letter from a parent to the district resulted in a meeting, in the course of which Geller admitted to sometimes having an "outburst" and that he was working on "calming down." The assistant principal, who was present at the meeting, cautioned Geller that the issue was serious and that, if such conduct was taking place in the classroom, it should not be.

2. Subsequently, in the course of one week in May, 1996, Geller was involved in three separate incidents in which he used physical force against three of his sixth grade students. The arbitrator found the witnesses' versions of the following events to be credible:

a. On May 22, 1996, one student, whom we shall call J.S., got up in class to retrieve a pencil that had fallen on the floor. Geller, after yelling at the student, took him by the elbow and "directed" him, very, very fast, out of the classroom and into the hallway. Once in the hall, Geller pushed or threw J.S. against a locker and then pushed J.S.'s head, forcing him against the wall next to the lockers. Geller grabbed J.S. by the shirt (around the collar) and threw him against the locker. A school nurse testified that two days later she observed a bruise on J.S.'s elbow, consistent with his being held in a forceful way.

b. On May 23, 1996, another sixth grade student, whom we shall call J.F., was standing near a chair in the classroom when Geller ordered all students to be seated. J.F. did not sit immediately, and Geller approached him from the rear, poking J.F. in the back three times in rapid succession. When J.F. turned, Geller shoved him with both hands; the force was sufficient to knock J.F. off balance and he fell on top of a desk. Geller then grabbed J.F. by the hand and

conduct was "unacceptable" and "cannot be condoned." With respect to the penalty of dismissal, the arbitrator noted that, "once having determined that misconduct occurred, the School Department has substantial discretion in determining the level of discipline to be imposed." He concluded, however, that the appropriateness of the discipline had to be measured against more than twenty years of service, no prior disciplinary problems, and good prior evaluations. Without elaboration, he found that, "[i]t is in the best interest of the students that a teacher of Mr. Geller's accomplishments and experienced [*sic*] be retained." He then ruled that the district had "just cause to impose severe discipline, short of discharge," directed that "the decision in this case constitutes a final warning to [Geller]," and ordered that Geller be reinstated at the start of the 1997-1998 school year without back pay. In his award the arbitrator found that "the dismissal of James Geller [was] not for just cause within the meaning of Chapter 71, Section 42," and in effect reduced Geller's dismissal to an unpaid suspension of approximately one school year.

2. *Standard of review.* A teacher with professional teacher status, such as Geller, can be dismissed only for "inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure . . . to satisfy teacher performance standards . . . or *other* just cause" (emphasis added). G. L. c. 71, § 42, third par. If a teacher with this status is discharged, he or she may seek review of the dismissal by filing a petition for arbitration. G. L. c. 71, § 42, fourth par. At an arbitration hearing, the school district has the burden of proving the grounds for dismissal, in this case, conduct unbecoming a teacher. G. L. c. 71, § 42, fifth par. In determining whether the school district has satisfied its burden, the arbitrator must

pulled him over to the teacher's desk. J.F. told his mother, who reported the incident to the principal. J.F. felt afraid of Geller as a result of the incident and did not return to Geller's class for the rest of the year.

c. The third incident occurred on or about May 27, 1996. Another student, whom we shall call C.R., admitted humming, with a view to distracting Geller. Geller grabbed C.R. by the shoulders and pushed him hard against the door. Geller then opened the door, pushing C.R. into the hallway and up against a locker, while screaming and yelling at him. C.R. reported the incident to his mother, who notified the authorities.

consider the best interests of the pupils in the district and the need to elevate standards of performance. *Id.* The arbitrator is required to issue a "detailed statement of the reasons for [his] decision." G. L. c. 71, § 42, sixth par.

The arbitrator's decision is subject to judicial review as provided in G. L. c. 150C (concerning collective bargaining agreements to arbitrate). G. L. c. 71, § 42, sixth par. Our role in reviewing an arbitrator's award pursuant to G. L. c. 150C, § 11, is limited. *Bureau of Special Investigations* v. *Coalition of Pub. Safety,* 430 Mass. 601, 603 (2000), quoting *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984). Unlike our review of factual findings and legal rulings made by a trial judge, we are bound by an arbitrator's findings and legal conclusions. "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union* v. *Misco, Inc.,* 484 U.S. 29, 36 (1987) (*Misco*). See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990); *School Comm. of Waltham* v. *Waltham Educators Ass'n,* 398 Mass. 703, 705 (1986) (arbitrator's decision may not be vacated on error of fact or error of law). "Even a grossly erroneous [arbitration] decision is binding in the absence of fraud" (citation omitted). *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 386, 390 (1973). This narrow scope of judicial review reflects a strong public policy favoring arbitration. *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co., supra* at 1007. However, if, on review, the court finds that an arbitrator has exceeded his authority in fashioning an award, the court is required to vacate it. G. L. c. 150C, § 11 (*a*) (3).[4] *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.,* 392 Mass. 407, 410-411 (1984) (whether arbitrator exceeded scope of his authority is question always open to judicial review).

3. *Arbitrator's scope of authority.* The power and authority of an arbitrator is ordinarily derived entirely from a collective

---

[4]General Laws c. 150C, § 11 (*a*), provides in pertinent part that "the superior court shall vacate an award if . . . (3) the arbitrators exceeded their powers."

bargaining contract, and he violates his obligation to the parties if he substitutes " 'his own brand of industrial justice' for what has been agreed to by the parties in that contract." *Georgia-Pacific Corp.* v. *Local 27, United Paperworkers Int'l Union,* 864 F.2d 940, 944 (1st Cir. 1988), quoting *United Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). An arbitrator cannot "transcend[] the limits of the contract of which the agreement to arbitrate is but a part." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co., supra,* quoting *Lawrence* v. *Falzarano,* 380 Mass. 18, 28 (1980). Stated differently, an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement" that he is confined to interpret and apply. *United Steelworkers* v. *Enterprise Wheel & Car Corp., supra* at 597. *School Comm. of Waltham* v. *Waltham Educators Ass'n, supra* at 706-707. In performing his responsibilities, the arbitrator exceeds his authority if he ignores the plain language of the contract. *Misco, supra* at 38.

In this case the source of the authority to arbitrate the dismissal of a teacher is a statute, not a collective bargaining contract. This important difference informs this court's determination of how the arbitrator's powers are to be ascertained and interpreted.

In the collective bargaining context, the arbitrator is ordinarily empowered to interpret the underlying contract and the extent of his powers thereunder. Such authority comes from the parties having agreed to it in the contract itself and is consistent with the notion that arbitrators have special expertise in the interpretation of collective bargaining agreements. See *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 115 (1977) (interpreting collective bargaining agreement ordinarily task for arbitrator and not court); *School Comm. of Hanover* v. *Curry,* 369 Mass. 685, 685 (1976) ("We do not review the arbitrator's interpretation of the agreement, since that subject is committed to the arbitrator by the agreement"). See also *Misco, supra* at 37-38 ("it is the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept"). But as the United States Supreme Court noted long ago, "the specialized competence of arbitrators pertains primarily to the

law of the shop, not the law of the land." *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 57 (1974), citing *United Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-583 (1960). "Where the determinations to be made are primarily issues of public law, the arbitrator possesses no special expertise . . . ." *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 156 (1975), *S.C.*, 369 Mass. 683 (1976) (no justification for allowing arbitrator to determine school committee's statutory rights). See *Massachusetts Bay Transp. Auth.* v. *Local 589, Amalgamated Transit Union*, 406 Mass. 36, 40 (1989), citing *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 411 (1984) ("court, upon review, need not defer to arbitrator's interpretation of relevant statutes"). Hence, the responsibility for interpreting the meaning of G. L. c. 71, § 42, and the scope of the arbitrator's authority thereunder remains with the court. It cannot be ceded to the arbitrator by agreement of the parties,[5] and has not been ceded to the arbitrator in the statute.

4. *Analysis.* The principal dismissed Geller for conduct

---

[5]The arbitrator describes the issue submitted to him for decision as follows:

"Was the dismissal of James Geller for just cause within the meaning of Chapter 71, Section 42? If not, what shall be the remedy?"

The parties do not contest this formulation. Regardless of how the parties framed the issue, the court must decide whether the arbitrator exceeded his authority in framing his award and in substituting an alternative remedy for that imposed by the district. See *Metro Chevrolet, Inc.* v. *Union de Tronquistas de P.R.*, 835 F.2d 3, 5 (1st Cir. 1987) (stipulated issue for arbitration should not be interpreted to confer broader authority on arbitrator than that set forth in collective bargaining agreement); *County College of Morris Staff Ass'n* v. *County College of Morris*, 100 N.J. 383, 394 (1985) (regardless of how issue framed by arbitrator, even in face of no apparent concern of parties, "the Court and the arbitrator are compelled by the constraints of the contract"); *Ohio Office of Collective Bargaining* v. *Ohio Civil Serv. Employees Ass'n, Local 11*, 59 Ohio St. 3d 177, 184 (1991) (court rejected parties' description of issues stipulated to arbitrator because if accepted it would permit arbitrator to exceed authority).

Insofar as the source of arbitral authority in the case before us derives from a statute rather than a contract, the parties could not properly authorize the arbitrator to act beyond his statutory authority in any event. See *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 155-156 (1975), *S.C.*, 369 Mass. 683 (1976) (issue of abolition of teaching position was by statute committed to school committee and should not have been submitted to arbitrator, therefore decision was beyond arbitrator's authority even if within scope of reference given to arbitrator by parties).

unbecoming a teacher based on three incidents of abuse (and a prior warning) that he contended supported that ground for dismissal. Conduct unbecoming a teacher is specifically identified in the statute as a ground on which dismissal is proper. The arbitrator found that Geller had engaged in the conduct with which he was charged. The fact that the arbitrator characterized the conduct as "unacceptable" and not "unbecoming," and that he did not use the phrase "conduct unbecoming a teacher" in his finding, but referred to it as conduct that "cannot be condoned," is not determinative. He found facts and described those facts in a manner that clearly establishes Geller's conduct to be "conduct unbecoming a teacher."[6]

Having found that Geller engaged in serious misconduct that the statute specifically identifies as proper grounds for dismissal, the arbitrator proceeded to apply an additional "just cause" analysis — weighing Geller's repeated misconduct against a more than twenty-year career of good performance — in an effort to gauge whether the punishment should be modified. In doing so he ignored the plain words and import of the statute. In essence, he substituted his own judgment of what the penalty should be for that of the district, and thereby acted beyond his authority.[7]

In concluding that the arbitrator acted beyond the authority

[6]See, e.g., *Director of the Div. of Employment Sec.* v. *Mattapoisett,* 392 Mass. 858, 859 (1984) (teacher who pushed student, behaved in "argumentative and overbearing manner," and pushed fellow teacher, engaged in conduct unbecoming teacher); *MacKenzie* v. *School Comm. of Ipswich,* 342 Mass. 612, 616 (1961) (teacher's profane utterance was improper and unbecoming conduct); *Kurlander* v. *School Comm. of Williamstown,* 16 Mass. App. Ct. 350, 357 (1983) (teacher's behavior, much of it in front of students, was "insolent, abusive, loud and out of control," and thus supported charge of unbecoming conduct). See also *Conward* v. *Cambridge School Comm.,* 171 F.3d 12, 20 (1st Cir. 1999) (shoving of student by teacher conduct "inappropriate for the scholastic environment").

[7]We note that the arbitrator found Geller's actions to constitute serious misconduct ("totally inappropriate," "unacceptable," which "cannot be condoned"), a finding consistent with the evidence adduced at the arbitration hearing. This is not the case of an arbitrator finding a teacher to have engaged in minor misconduct that, however, nominally fit within a category on which dismissal could be based. In such circumstances, an arbitrator's finding that the conduct did not rise to the level of misconduct contemplated by the statute as a ground for dismissal is one that would likely lie within the scope of his authority.

vested in him by G. L. c. 71, § 42, I interpret the statute in accord with the interpretation many courts have given to collective bargaining agreements that identify specific grounds warranting dismissal. In reviewing arbitration awards arising out of such agreements, courts have consistently held that, when an agreement specifically enumerates grounds for dismissal, the arbitrator does not have the authority to judge whether discharge is an excessive penalty for the violation committed. Fogel, Court Review of Discharge Arbitration Awards, 37 Arb. J. 22, 25-28 (No. 2, 1982). This is the case even when the agreement also provides for dismissal on just cause.[8]

---

[8] See *Warrior & Gulf Navigation Co.* v. *United Steelworkers*, 996 F.2d 279, 281 (11th Cir. 1993), cert. denied, 511 U.S. 1083 (1994) (in agreement which required "just cause" for termination and also listed conduct for which an employee would be subject to discharge, arbitrator lacked discretion to reduce discharge to suspension for listed conduct); *Delta Queen Steamboat Co.* v. *District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 601, 604 (5th Cir. 1989), cert. denied, 498 U.S. 853 (1990) (if agreement provides for termination for "proper cause" and includes nonexhaustive list of offenses that would constitute cause, arbitrator is not free to measure proved conduct against forty years of service and override termination decision); *Georgia-Pacific Corp.* v. *Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 945 (1st Cir. 1988) ("just cause" is but one ground for discharge to be considered independently of other contractually enumerated grounds for discharge; deciding case solely on just cause grounds in spite of other enumerated grounds is "patent example of arbitral excess," and arbitrator does not have such unfettered discretion); *S.D. Warren Co.* v. *United Paperworkers' Int'l Union, Local 1069*, 845 F.2d 3, 8 (1st Cir.), cert. denied, 488 U.S. 992 (1988) (where agreement provided for discharge on "proper cause" and identified specific causes upon which discharge could be based, arbitrator not authorized to determine different remedy for proved conduct); *Metro Chevrolet, Inc.* v. *Union de Tronquistas de P.R.*, *supra* (when general "just cause" provision for discharge in agreement is coupled with specific conduct provision upon which discharge may be based, appropriateness of penalty for that conduct is removed from consideration and is outside scope of arbitrator's review); *International Bhd. of Firemen & Oilers, Local No. 935-B* v. *Nestle Co.*, 630 F.2d 474, 476 (6th Cir. 1980) (not for arbitrator to decide that discharge is too severe penalty for insubordination that he found because insubordination identified in contract as grounds for termination); *Mistletoe Express Serv.* v. *Motor Expressmen's Union*, 566 F.2d 692, 695 (10th Cir. 1977) (arbitrator may not construe "just cause" provision of labor contract to include progressive discipline requirement when contract provisions explicitly state failure of employee to meet certain condition is grounds for discharge; use of words "may discharge" gives employer, not arbitrator, option to discharge for stated grounds); *County College of Morris Staff Ass'n* v. *County College of Morris*, 100 N.J. 383, 394-395 (1985) (where agreement provided for dismissal of employees for "just cause," and included

Our statute is analogous to such an agreement. It enumerates six specific grounds on which dismissal may be based, in addition to "other just cause." In this context, the six specific grounds set forth in the statute constitute adequate grounds for dismissal independent of "other just cause."[9] Stated conversely,

a list of conduct for which employees could be discharged, arbitrator exceeded authority by reading into agreement requirement for progressive discipline and reducing termination to suspension); *Ohio Office of Collective Bargaining* v. *Ohio Civil Serv. Employees Ass'n, Local 11,* 59 Ohio St. 3d 177, 182-183 (1991) (agreement provided that discipline not to be imposed except for "just cause," and that abuse of patient was grounds for termination; arbitrator exceeded authority by grafting a further just cause requirement onto clause governing termination for abuse and reducing penalty). See also General Drivers, Warehousemen & Helpers, Local 89 *vs.* Willamette Indus., Inc., United States Dist. Ct. No. 98-5476 (6th Cir. July 6, 1999) (where agreement provided that employee could be discharged for "good cause" or violation of specified rules, arbitrator had no authority to modify discharge penalty on finding violation of such rules); Marathon Oil Co. *vs.* Cylinder Gas, Chem. Petroleum, Distillery, Auto Serv., United States Dist. Ct. No. 97-1780 (6th Cir. Sept. 25, 1998) (agreement provided for discharge only for "just cause," but listed certain grounds for discharge including dishonesty; arbitrator exceeded authority in applying additional just cause analysis and reducing discharge for dishonesty because of employee's length of service and clean record; if dishonesty identified as a basis for discharge it is "just cause").

[9]The word change in the statute from "other good cause" to "other just cause" cannot be read so broadly as to have limited and modified the specifically enumerated grounds for dismissal, or to have given to the arbitrator authority to substitute "his own brand of industrial justice" for that of the responsible public authority.

The words "or other good cause" contained in the previous version of the statute as a basis for dismissal had been interpreted as an additional category, expanding but not modifying the enumerated bases. See, e.g., *Faxon* v. *School Comm. of Boston,* 331 Mass. 531, 533 (1954) ("conduct unbecoming a teacher" and "other good cause" are distinct designations in G. L. c. 71, § 42); *Graves* v. *School Comm. of Wellesley,* 299 Mass. 80, 85 (1937) (dismissal in conformity with G. L. c. 71, § 42, may be done "only on certain specified grounds or for 'other good cause'"). There is no reason why the words "or other just cause" should be interpreted differently. It is reasonable, however, to conclude from the substitution of the word "just" for "good" that the Legislature intended to limit the broad range of conduct that had previously been considered as warranting dismissal in this catchall category, to serious misconduct. The words "good cause" have long been defined as "any ground which is put forward [by the supervising authority] in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the . . . task of building up and maintaining an efficient school system." *Rinaldo* v. *School Comm. of Revere,* 294 Mass. 167, 169 (1936). By comparison, the words "just cause" have a somewhat different meaning in the public employment

the six specifically enumerated grounds constitute "just cause" for dismissal by clear statutory mandate. From either perspective, a proper interpretation of the statute precludes the arbitrator from conducting a further "just cause" analysis (e.g., weighing the teacher's prior record against the misconduct for the purpose of justifying a different sanction) once he has found that one of the enumerated grounds for dismissal has been proved. See cases cited in note 8, *supra*.[10]

While parties to a private collective bargaining agreement may choose to give an arbitrator a great deal of discretion and authority to determine what sanctions to impose for misconduct, G. L. c. 71, § 42, does not, at least not as to dismissals based on the conduct specifically enumerated in G. L. c. 71, § 42, third par. If the Legislature had intended to cede this authority to an arbitrator, it could readily have done so.[11] The principal, with the approval of the superintendent of schools, retains the sole statutory authority to determine whether to discharge, demote, or discipline teachers for the misconduct which the Legislature has specifically identified.[12] In the absence of such

arena, i.e., "substantial misconduct which adversely affects the public interest." *Murray* v. *Second Dist. Court of E. Middlesex*, 389 Mass. 508, 514 (1983). *Leominster* v. *International Bhd. of Police Officers, Local 338*, 33 Mass. App. Ct. 121, 126 (1992).

[10]"Where a collective bargaining agreement specifies certain behavior as just cause for discharge, courts will vacate an arbitration award that modifies or annuls a discharge assessed under the specified cause." Fogel, Court Review of Discharge Arbitration Awards, 37 Arb. J. 22, 25 (No. 2, 1982).

[11]In § 42 the arbitrator is not empowered to impose a different remedy for proved misconduct. If the arbitrator finds that dismissal was improper, he may then take appropriate remedial action including awarding "back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof." G. L. c. 71, § 42, sixth par.

[12]The interests at stake in teacher dismissals reach beyond the employer and employee. As forcefully stated in a case decided prior to the Education Reform Act of 1993, "[m]anifestly one of the most important duties involved in the management of a school system is the choosing and keeping of proper and competent teachers. The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system." *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362 (1940). While the Education Reform Act shifted personnel authority from the school committee to superintendents and principals, it did not alter the long-standing deference to managerial prerogative with respect to the assessment of teacher qualifications or the statutory power to

authority, the arbitrator exceeds his powers when he does so.[13]

Because the arbitrator erroneously applied a further just cause analysis to misconduct that was both enumerated in the statute as a proper basis for discharge and proved by the district, and because he substituted his judgment for that of the district by imposing "severe discipline, short of discharge," the arbitrator exceeded the scope of his authority.

5. *Best interests of the students.* General Laws c. 71, § 42, fifth par., requires that the arbitrator "consider the best interests of the pupils in the district and the need for elevation of performance standards" in determining whether the district has proved grounds for dismissal. This simply stated requirement is a direct reminder that the purpose of the Education Reform Act of 1993, from its billions of dollars in additional financial aid to local school systems, to its establishment of teacher performance standards, is to improve the education provided to the students in the classrooms of our public schools. It is also a reminder that the teacher dismissal statute is not only about the relationship between employer and employee, it is about the education of students. Their stake in the dismissal of inadequate teachers must now be specifically taken into account[14] and, accordingly, their best interests and the elevation of performance standards

discharge teachers. See, e.g., *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers Ass'n/Mass. Community College Council*, 423 Mass. 23, 31 n.8 (1996). Decisions concerning managerial rights in the public sector are qualitatively different from those in the private sector, not only because of the presence of statutes regulating and limiting the public employer, but also because of the necessity of safeguarding public control over and accountability for such decisions. Nothing in the Education Reform Act delegates to arbitrators the critically important public responsibility for deciding when and whether to dismiss teachers whose conduct constitutes one of the causes for discharge enumerated in § 42. The discretion to dismiss or impose some other remedy remains with the responsible public officials.

[13]That the arbitrator believed he had the authority to fashion his own remedies as if he were the principal is most apparent in that portion of his decision where he reinstates Geller without back pay but directs that this is to be "a final warning" to Geller. The statute does not give the arbitrator any authority to discipline, discharge, or issue "final warnings" to teachers.

[14]That interest may not always be of significant consequence in a dismissal action. Theft or other gross misconduct outside of the classroom would justify dismissal based on other important principles, regardless of the teaching abilities of the teacher in question. But when a teacher is dismissed for conduct in

are considerations that might properly influence the ultimate conclusion of the arbitrator in a particular case.[15]

In this case, after weighing Geller's misconduct against his more than twenty years of teaching service to ascertain whether dismissal was too severe a penalty (and apparently concluding that it was), the arbitrator simply recites in his decision that it is also "in the best interest of the students that a teacher of Mr. Geller's accomplishments and experienced [*sic*] be retained." It is unclear how or whether this cursory conclusion regarding an important statutory consideration contributed to the arbitrator's ultimate determination that "[t]he dismissal of James Geller was not for just cause within the meaning of Chapter 71, Section 42." Whether the statement was intended merely as confirmation that this required consideration had been made and was consistent with the outcome of the arbitrator's "just cause analysis," or whether it was an important factor in tipping the scales against dismissal, I cannot ascertain from the decision. I need not address this issue because, as set forth above, it is my conclusion that the arbitrator exceeded his authority by applying a further just cause analysis to the proven misconduct in the first instance.

For these reasons I concur in the decision to vacate the Superior Court judgment and would vacate the arbitrator's award as well.

IRELAND, J. (concurring in the result, with whom Cordy, J., joins). In vacating the arbitrator's award, I would adopt the rationale of the Appeals Court in *School Dist. of Beverly* v.

the classroom, student interests are directly implicated and may well override typical employer-employee considerations. For example, it would not appear to be in the best interests of the students of a school district for a teacher to be retained who is no longer capable of effectively teaching or creating a positive learning environment — regardless of how many years of unblemished service he or she may have accumulated in the past, and no matter how such a period of prior service might be valued in a different employment context.

[15]In such a case, we would expect the reasons for that conclusion to be set forth in detail in the "detailed statement of the reasons" required by G. L. c. 71, § 42, sixth par.

*Geller*, 50 Mass. App. Ct. 290, 294-297 (2000).[1] In particular, I believe that the arbitrator exceeded his authority in reaching a conclusion that offends our strong public policy against the use of physical force by a teacher against a student. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990), quoting *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980) (arbitrator "may not 'award relief of a nature which offends public policy'"). Notwithstanding competing public policies, an "arbitrator's award, finding no just cause for discharge and reinstating a teacher who on three separate occasions forcibly pushed, shoved, jabbed, dragged, knocked down, or slammed into a locker three different sixth-grade students," cannot stand. *School Dist. of Beverly* v. *Geller*, *supra* at 297. "At a time when every competent teacher, administrator, parent and concerned citizen is seeking ways to award and retain good teachers and to eliminate poor teachers, it is anomalous indeed for this court to put its stamp of approval on an arbitrator's decision that . . . takes a mighty step backwards in its educational implications." *Iowa City Community Sch. Dist.* v. *Iowa City Educ. Ass'n*, 343 N.W.2d 139, 152 (Iowa 1983) (Reynoldson, C.J., dissenting).

"[B]ecause the public policy '[exception] allows courts to by-pass the normal heavy deference accorded to arbitration awards and potentially to "judicialize" the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy.'" *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604 (2000) (*BSI*), quoting *E.I. DuPont de Nemours & Co.* v. *Grasselli Employees Indep. Ass'n of E. Chicago*, 790 F.2d 611, 615 (7th Cir.), cert. denied, 479 U.S. 853 (1986). With this concern in mind, this court fashioned a three-pronged test to limit significantly the scope of the public policy exception. See *BSI*, *supra* at 604-605. First, the public policy in question "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and

---

[1]Because of my view that the arbitrator exceeded his statutory authority in this case by reaching a conclusion that offended public policy, I do not find it necessary to reach the broader question of the arbitrator's authority to modify the sanction of dismissal discussed in Justice Cordy's concurring opinion.

not from general considerations of supposed public interests.' " *BSI, supra* at 604-605, quoting *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995) (*Massachusetts Highway Dep't*). Second, "the conduct involved cannot be 'disfavored conduct in the abstract,'" *BSI, supra* at 605, quoting *Massachusetts Highway Dep't, supra* at 17, but must constitute "disfavored conduct which is *integral to the performance of employment duties*" (emphasis in original). *BSI, supra.* See *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989). Third, we require "a showing that the arbitrator's award reinstating the employee violates public policy to such an extent that the employee's conduct would have required dismissal." *BSI, supra.*

First, in what is almost too obvious for discussion, ample statutory, administrative, and judicial sources make unmistakably clear, the protection of children, particularly those in elementary school, is a "well defined and dominant" public policy of the Commonwealth. Second, the teacher's abusive conduct is integrally related (not to mention wholly antithetical) to his employment duties as an educator and role model charged with facilitating the intellectual and moral development of young children. Third, I believe the arbitration award of reinstatement "conflicts with the clear public policy of protecting the children of our state." *State* v. *AFSCME, Council 4, Local 2663*, 59 Conn. App. 793, 800 (2000) (vacating arbitrator's reinstatement of employee who drove children entrusted to care of State agency after employee pleaded guilty to felony charges of possession of narcotics with intent to sell).

In reaching my conclusion, I wish to emphasize the following. Here, the teacher's misconduct goes "to the heart of the worker's responsibilities," *Massachusetts Highway Dep't, supra* at 17, quoting *United States Postal Serv.* v. *American Postal Workers Union*, 736 F.2d 822, 823, 825 (1st Cir. 1984). See *State* v. *AFSCME, Council 4, Local 387*, 252 Conn, 467, 479 (2000) (Peters, J., concurring) (fact that egregious misconduct occurred while on job distinguishes it from cases of employee misconduct where courts upheld arbitral awards reducing sanctions against employees). Part of a teacher's responsibilities

include the maintenance of a safe environment that is conducive to their students' growth. Given that reality, common sense suggests that it is wholly inappropriate to place school children in daily contact with a teacher who has repeatedly inflicted physical abuse on his students. See *State* v. *AFSCME, Council 4, Local 2663, supra* at 806; *School Dist. of Beverly* v. *Geller, supra* at 297 (reinstating teacher might jeopardize "the physical safety of members of the public"). Because, in my opinion, "the arbitration award violates public policy, 'we are obliged to refrain from enforcing it.' " *Massachusetts Highway Dep't, supra* at 16 n.5, quoting *W.R. Grace & Co.* v. *Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983).

As I have echoed on previous occasions, see *Barnett* v. *Lynn*, 433 Mass. 662, 667-668 (2001) (Ireland, J., concurring) (advance notice of danger to children should hoist added responsibility on public authorities); *Brum* v. *Dartmouth*, 428 Mass. 684, 709-710 (1999) (Ireland, J., concurring) ("I believe that parents should be entitled to believe that the school officials to whom they entrust their children will not be deliberately indifferent . . . and do nothing when made aware of an imminent threat to the safety of their children"), I can think of no public policy capable of justifying decisions (by either arbitrators, administrative agencies, or courts) that expose school children to known risks of physical harm. Where the court must balance two competing policies, i.e., one favoring arbitration and one protecting our children, I do not hesitate to conclude that the latter outweighs the former.


COWIN, J. (dissenting, with whom Greaney and Spina, JJ., join). I would conclude that the arbitrator did not exceed the scope of his authority by reinstating James Geller to his position as a teacher without back pay (effectively ordering almost a one year suspension). I reach this conclusion because I believe that the arbitrator acted pursuant to the limits of the governing statute, G. L. c. 71, § 42, and because no "well-defined and dominant" public policy precludes an award of reinstatement in this case. *Massachusetts Highway Dep't* v. *American Fed'n of*

*State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995) (hereinafter *Massachusetts Highway Dep't*).

The court's role in reviewing an arbitration award is narrow. *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 603 (2000) (hereinafter *BSI*), and cases cited. An award is not vacated except in the circumstances established in G. L. c. 150C, § 11. "We do not, and cannot, pass on an arbitrator's alleged errors of law and, absent fraud, we have no business overruling an arbitrator . . . ." *Massachusetts Highway Dep't*, *supra* at 15, quoting *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187 (1984). See *United Paperworkers Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 36 (1987) (hereinafter *Misco*) ("courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact"). This limited scope of judicial review reflects a strong policy favoring arbitration. See, e.g., *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990).

1. *The statutory requirements.* The authority to arbitrate the dismissal of a teacher with professional teacher status is derived from statute rather than from contractual agreement. Just as an arbitration award cannot "transcend the limits of the contract of which the agreement to arbitrate is but a part," *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, *supra*, quoting *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980), an arbitration award cannot ignore the limits imposed by statute. Here, the relevant statute, G. L. c. 71, § 42, provides that a teacher with professional teacher status "shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to [G. L. c. 71, § 38] or other just cause." G. L. c. 71, § 42, third par. "[T]he school district shall have the burden of proof." G. L. c. 71, § 42, fifth par. "In determining whether the district has proven grounds for dismissal consistent with this section, the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards." G. L. c. 71, § 42, fifth par.

I believe that the Legislature not only permits, but indeed

expects, the arbitrator to review the discipline imposed by the school district even if the district has established grounds that might support a dismissal decision. If the Legislature intended an arbitrator to uphold a school district's decision to discharge a teacher whenever the teacher's conduct could potentially support such a decision, the Legislature could have simply provided that the school district has the burden of proving grounds for dismissal and that the arbitrator is to determine whether the school district has satisfied its burden of proof. That, however, is not what the statute provides. Instead, the Legislature required that "[i]n determining whether the district has proven grounds for dismissal consistent with this section, the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards." G. L. c. 71, § 42, fifth par. By adopting this requirement, the Legislature, in my view, intended that the arbitrator review the dismissal decision in light of the circumstances surrounding the particular case.

Whether grounds for dismissal consistent with the statute exist is a question of fact. Considerations of the students' best interests and the need for elevating performance standards are primarily relevant in reviewing whether the decision to discharge a teacher was appropriate as measured against the conduct that occurred. It may be that, although a teacher engaged in misconduct in a particular instance, given the teacher's exemplary teaching record and no prior history of misconduct, it is in the best interests of the students that the teacher be retained. Accordingly, in order to give effect to the requirement that the arbitrator consider the students' best interests and the need for elevation of performance standards, the statute must be interpreted as authorizing the arbitrator to determine both whether the grounds alleged by the school district have occurred and, if so, whether such grounds warrant dismissal. To conclude otherwise would render the express requirement that the arbitrator consider the students' best interests and the need for elevating performance standards marginal, if not meaningless.[1] "We are bound to 'construe [a] statute to avoid any part of the legislation being meaningless or

---

[1] I recognize that this language may have been included in part to restrict the occasions on which an arbitrator can overrule the school district on the

duplicative.' " *American Honda Motor Co.* v. *Bernardi's, Inc.*, 432 Mass. 425, 435 (2000), quoting *Richard Lundgren, Inc.* v. *American Honda Motor Co.*, 45 Mass. App. Ct. 410, 415 (1998).

Justice Cordy states in his opinion that "when an agreement specifically enumerates grounds for dismissal, the arbitrator does not have the authority to judge whether discharge is an excessive penalty for the violation committed." *Ante* at 232 (Cordy, J., concurring). The opinion concludes that the statute at issue in this case enumerates six grounds on which a teacher may be dismissed and therefore that, once the arbitrator determined that Geller had engaged in misconduct (i.e., inappropriately yelling at and touching students), the arbitrator was required to uphold the school district's dismissal decision. See *id.* at 233-234 (Cordy, J., concurring).

The statute does indeed list grounds for dismissal, but it also contains specific language directing the arbitrator to review the penalty imposed even where misconduct is found. By connecting consideration of the students' best interests and elevation of performance standards to the determination whether the school district has proved grounds for dismissal, the statute authorizes an arbitrator to measure the conduct at issue against the discipline imposed and consider whether that discipline is consistent with the students' best interests and the need for elevating performance standards. As Justice Cordy's opinion acknowledges, an arbitrator does not exceed his or her authority by reviewing the dismissal decision, despite the fact that the grounds for dismissal are enumerated, where the statute, as here, contains express language empowering the arbitrator to do so. The interpretation of the statute in Justice Cordy's opinion overlooks this express language and narrowly focuses on the

---

theory that the school district ordinarily is in a better position to know what is in the students' best interests and whether the objective of improving performance standards is being realized. On the other hand, the language used by the Legislature is general, and the most reasonable interpretation of it is that the arbitrator should be considering these criteria and then taking them into account in determining whether to agree with the school district or to overrule it.

fact that the statute lists grounds for dismissal.[2] Such an interpretation is contrary to the clear legislative intent.[3]

Further, the statute provides that if the arbitrator finds that "dismissal was improper under the standards set forth in [G. L. c. 71, § 42], the arbitrator may award back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof." If an arbitrator were to find that dismissal was improper under the construction of the statute in Justice Cordy's opinion, then the arbitrator must have determined that the school district failed to prove any grounds that could support a dismissal decision (because, according to that opinion, the arbitrator can review only the grounds alleged by the district and not the discipline imposed at this point). The only remedy in such a situation would be full reinstatement with back pay. If the school district failed to prove the grounds that served as the basis for its dismissal decision, the arbitrator could not penalize the teacher in any way. But, because the statute permits an arbitrator to award reinstatement without back pay (thereby ordering an unpaid suspension), the statute must allow for situations where the arbitrator finds that there

---

[2]Justice Cordy's opinion recognizes that an arbitrator is required to "consider the best interests of the pupils in the district and the need for elevation of performance standards," but it offers no suggestion as to how an arbitrator is to fulfil such a requirement if he or she is limited to reviewing only whether grounds for dismissal exist. *Ante* at 235 (Cordy, J., concurring). At one point, the opinion presumes that the students' best interests are relevant when they support a decision to discharge a teacher. *Ante* at 235 (Cordy, J., concurring) (students' "stake in the dismissal of inadequate teachers must . . . be specifically taken into account"). Then, when discussing the arbitrator's statement that it was in the students' best interests to retain Geller, the opinion concludes that it is not necessary to decide how to treat such a statement because the arbitrator exceeded his authority by making it. *Ante* at 236 (Cordy, J., concurring). In my view, an arbitrator can only satisfy the requirement that he or she consider the students' best interests and the need for elevating performance standards by determining when such considerations support a dismissal decision and when they call for a penalty, if any, that is less severe.

[3]In a footnote, Justice Cordy's opinion suggests that if the misconduct at issue is "minor," although in theory falling under one of the enumerated grounds for dismissal, an arbitrator could modify a dismissal decision without exceeding the scope of his or her authority. See *ante* at 231 n.7 (Cordy, J., concurring). This is inconsistent with the opinion's conclusion that an arbitrator cannot review the penalty once he or she determines that the school district has established grounds that could support a dismissal decision.

are grounds that could support discharge under the statute but that dismissal is too severe a penalty when measured against the best interests of the students and the need for elevating performance standards.

Finally, my view of the statute as empowering the arbitrator to review the discipline imposed even where the teacher engaged in conduct that could constitute grounds for dismissal is substantiated by the legislative history. In an earlier draft of legislation to amend G. L. c. 71, § 42, Governor William Weld proposed that an arbitrator could overturn dismissal decisions only in five specific situations and that the arbitrator could not "substitute his standards or judgments for those of the [school] principal." 1992 House Doc. No. 5750, at 107. This proposal was not enacted. Rather, the legislation that passed delegated much more expansive powers to arbitrators. It requires the school district to prove that it had just cause for dismissal, while instructing the arbitrator to consider the students' best interests and the need for elevating performance standards, and permits the arbitrator to award reinstatement, back pay, benefits, or some combination thereof, when the decision to dismiss the teacher, in the arbitrator's judgment, was improper.

Applying that history to this case, here, the arbitrator could well conclude that given the teacher's record, it was not in the students' best interests to terminate his employment. And the issue of elevation of performance standards is irrelevant because no one ever questioned his performance as a teacher.[4]

2. *Public policy.* Contrary to the concurring opinion of Justice Ireland, I do not believe that the arbitration award reinstating Geller violates public policy. *Ante* at 237 (Ireland, J., concurring in the result). Beginning with our decision in *Massachusetts Highway Dep't, supra* at 16-19, and later reaffirmed in *BSI, supra* at 604-605, we have enumerated three prerequisites before a party can establish that an arbitration award reinstating a discharged employee violates public policy. First, any such public policy must be "well defined and dominant," as

---

[4]As the arbitrator here clearly considered the students' best interests and did not need to consider the elevation of performance standards, I do not address a case where the arbitrator refused to consider these interests and standards when such considerations were relevant to the dismissal decision.

determined "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *BSI, supra,* quoting *Massachusetts Highway Dep't, supra* at 16. Second, the conduct at issue cannot be disfavored in the abstract, but must be "disfavored conduct which is integral to the performance of employment duties." *BSI, supra* at 605, quoting *Massachusetts Highway Dep't, supra* at 17. Third, there must be a "showing that the arbitrator's award reinstating the employee violates public policy to such an extent that the employee's conduct would have required dismissal." *BSI, supra,* citing *Massachusetts Highway Dep't, supra* at 19. At a minimum, it is clear that the third prerequisite has not been met here, as there is no public policy that teachers' employment must be terminated for the conduct at issue in this case.

My view that the arbitrator's award did not violate public policy is consistent with prior decisions of this court and those of the Supreme Court of the United States. In *Massachusetts Highway Dep't, supra* at 13-14, for example, an employee of the Massachusetts Highway Department was fired after State police found a loaded handgun with an obliterated serial number in his tool box. An arbitrator ordered that the employee be reinstated. *Id.* at 14. The department argued that the award should be vacated because it violated the public policy against the unauthorized possession of handguns. *Id.* We disagreed. Although the department had a written policy against the presence of weapons on work premises, the policy did not require that the employee be discharged. *Id.* at 20. We stated that, while *the employee* may have violated criminal statutes and the policies that the statutes embody, *the award* reinstating him did not. *Id.*

Thereafter, in *BSI, supra,* we applied the reasoning of the *Massachusetts Highway Dep't* case to uphold an arbitration decision reinstating two BSI employees who had used their access to Department of Revenue records to examine tax records of certain sport celebrities and BSI managers. We determined that, although there was a "well-defined and dominant" public policy protecting confidential tax information and the employees' conduct in accessing confidential tax records was integral and directly related to the performance of their employment du-

ties, there was no public policy requiring that such employees be dismissed. *Id.* at 606 (employees "violated public policies embodied by statutes protecting confidential tax information," but "the collective bargaining contract did not require dismissal").

Recently, in *Eastern Associated Coal Corp.* v. *United Mine Workers, Dist. 17*, 531 U.S. 57, 62-63 (2000) (hereinafter *Eastern Associated Coal*), the Supreme Court of the United States addressed the issue whether public policy requires vacation of an arbitration award reinstating a discharged employee. The Court stated that the critical question is "not whether [the employee's conduct] itself violates public policy, but whether the agreement to reinstate him does so." *Id.* See *Boston Med. Ctr.* v. *Service Employees Int'l Union, Local 285*, 260 F.3d 16 (1st Cir. 2001). The Court agreed "in principle, that courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates" laws or legal precedents. *Eastern Associated Coal, supra.* The Court emphasized, however, that "the public policy exception is narrow and must satisfy the principles set forth in *W.R. Grace* and *Misco.*" *Id.*

Applying these principles to the case before it, the Court held that public policy considerations did not require the vacation of an arbitration award reinstating an employee truck driver who twice tested positive for drugs. *Id.* at 65-66. The Court concluded that there were several relevant policies as ascertained by reference to the laws and legal precedents but that the reinstatement award neither was contrary to public policy nor conflicted with any statute or regulation. *Id.* at 64-65. Because "[n]either Congress nor the Secretary [of Transportation] has seen fit to mandate the discharge of a worker who twice tests positive for drugs," the Court "hesitate[d] to infer a public policy in this area that goes beyond the careful and detailed scheme Congress and the Secretary have created." *Id.* at 67.

I believe that the reasoning of the Supreme Court's decision in *Eastern Associated Coal* expresses the same policies and principles that we adopted in *Massachusetts Highway Dep't* and *BSI* and applies to the case before us today. It is undisputed that Geller's conduct of "inappropriately touch[ing] and yell[ing] at

students" was undesirable, to be discouraged, and worthy of a penalty. However, the question for this court is not whether Geller's behavior was wrong, but whether a "well-defined and dominant" public policy requires his discharge. In my view, the answer to that question is no.

Arbitration awards have been vacated on public policy grounds only in the most exceptional cases or where there is clear legislative intent requiring dismissal. "[E]xamples of arbitration results that so offend public policy that they should be set aside by a court are not readily to be found. This is not surprising. An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference. The offending arbitrator's award which properly results in our setting it aside must be so offensive that one is to be seen only rarely." *BSI, supra* at 604 n.4, quoting *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l,* 861 F.2d 665, 670 (11th Cir. 1988), cert. denied, 493 U.S, 871 (1989).

In *Plymouth* v. *Civil Serv. Comm'n,* 426 Mass. 1, 3 (1997), for example, we upheld a police officer's discharge for smoking cigarettes because personnel administration rules and a State statute that prohibited the officer from smoking required her discharge: "Any employee . . . who is found, after a hearing . . . to have smoked any tobacco product . . . shall be terminated." This is an expression of public policy that cannot be disregarded.

There is no such expression in this case. No public policy requires that a teacher be fired in these circumstances. See *Massachusetts Highway Dep't, supra* at 19 ("If an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld"). If the Legislature, which enacted a comprehensive statute, has not seen fit to mandate the dismissal of a teacher in this situation, then we should be extremely wary about inferring a public policy that goes beyond the legislative enactment. See *BSI, supra* at 604, quoting *E.I. DuPont de Nemours & Co.* v. *Grasselli Employees Indep. Ass'n of E. Chicago,* 790 F.2d 611, 615 (7th Cir.), cert. denied, 479 U.S. 853 (1986) ("because the public policy 'doctrine allows courts to by-pass the normal heavy deference accorded to arbitration awards and

potentially to "judicialize" the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy'").

We have consistently adhered to the principle that there is a strong public policy favoring arbitration. See *BSI, supra* at 603, quoting *Massachusetts Highway Dep't, supra* at 16; *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). If this court is to continue applying that principle, it cannot simply espouse public policy as the ground for vacating arbitration decisions whenever it is unhappy with the arbitration result. We cannot purport to encourage arbitration and yet devise ways to undermine an arbitrator's authority. The public policy exception should be applied only in those cases where there is a legislative or regulatory requirement of discharge.

Defining public policy is inherently a legislative, and not a judicial, function. See, e.g., *Kennecott Utah Copper Corp.* v. *Becker*, 195 F.3d 1201, 1207 (10th Cir. 1999), cert. denied, 531 U.S. 1035 (2000) ("determining public policy is a uniquely legislative endeavor, one not well suited to judicial resolution"). The Legislature here provided guidelines for the arbitrator to decide whether teacher dismissal would be warranted, but chose not to specify the circumstances under which teacher dismissal would be required. I therefore cannot conclude that the award reinstating Geller offends any "well-defined and dominant" public policy.

I would hold that there are no statutory or public policy reasons for vacating the arbitrator's award in this case and would affirm the decision of the Superior Court judge upholding the award of reinstatement.