Brassard, Raymond J., J.
The plaintiff, the Boston Public Health Commission (“the Commission”), brought this action pursuant to G.L.c. 150C, §11, seeking vacation of an arbitration award in favor of the defendant, Boston Emergency Medical Services-Boston Patrolmen’s Association (“the Association”). The Association counterclaimed, seeking (1) confirmation of the arbitrator’s award pursuant to G.L.c. 150C, § 10, and (2) an order compelling compliance therewith. After a hearing and careful consideration of the papers, the Commission’s Motion to Vacate Arbitration Award is ALLOWED, and the Association’s Motions to Confirm and Compel Compliance with Arbitration Award are DENIED.
BACKGROUND
The Commission and the Association are parties to a collective bargaining agreement (“CBA”), which took effect on July 1, 2003. Pursuant to the CBA, the Association represents certain Commission employees throughout the grievance and arbitration procedures set forth therein. This case concerns the Commission’s February 14, 2005 termination of Ralph Homer (“Homer”),[1] on the basis that he violated the Sick Leave Policy (“SLP”).[2] Although neither party disputes the fact that Homer suffered from personal medical problems that caused him great pain, the Commission asserts that Homer knowingly failed to take advantage of available medical leave benefits, which would have excused his absences under the SLP.
The Association grieved Homer’s termination, and ultimately, the dispute went to arbitration. Article 8 of the CBA provides that an arbitrator should determine “[wjhether a written provision of [the CBA] has been violated in its application to the grievant,” and that he or she is “without power to alter, amend, add to, or detract from the language of [the] Agreement.” Arbitrator Richard Higgins heard the dispute and framed the issue as “[wjhether the commission’s .. . termination of . . . Homer violated Article 7, Section 1 of the parties’ [CBA].” On March 17, 2006, he concluded that Homer’s termination violated Article 7, §1 of the CBA “in that it was unreasonable.”
Article 7, § 1 of the CBA provides that “[n]o employee who has completed the probation period shall be discharged on arbitrary, capricious or unreasonable grounds.”[3] Limiting the scope of Article 7, however, is the SLP, which establishes progressive disciplinary measures for violations thereof. The policy states:
The parties . . . agree that employees who violate the attached [SLP] shall be subject to discipline as provided in the attached policy and that such discipline shall not be deemed in violation of Article 7 of the parties’ [CBA], except that the [Association] reserves the right to grieve discipline pursuant to the attached [SLP] that is issued in violation of the policy.
The progressive discipline under the SLP ranged from a written warning, to a one-, five-or ten-day suspension, and finally, to discharge.
The record in this case demonstrates that Homer received several written warnings, as well as three one-day and three five-day suspensions during his employment with the Commission. In addition, “as a result of his attendance during the second quarter of 2004, Lt. Homer . . . received a ten-day suspension *29 under the [SLP].”[4] Thus, “absent any other consideration, if Lt. Homer exceeded SLP limits in the [fourth] quarter of 2004, that fact would have triggered the progressive disciplinary system, and the next step thereon would have been termination for Lt. Homer.” The arbitrator also acknowledged a fourth-quarter absence, which “triggered the [SLP] for that quarter, thereby exposing Lt. Homer to the next step on the progressive discipline system, which was termination.” Notwithstanding these facts, however, the arbitrator held that Homer’s termination was unreasonable because the Commission failed to accept Homer’s Family and Medical Leave Act (“FMLA”) application, which would have excused the fourth-quarter absence from disciplinary consideration under the SLP.[5]
Although Homer’s fourth-quarter absence, which triggered his termination, occurred on December 8, 2004, the Commission received no notice of Homer’s intention to file an FMLA application until January 25, 2005, which was four days after the Commission notified him of his pending discharge.[6] “ [I]n a last ditch effort to save his job,” the arbitrator acknowledged, Homer sought retroactive application of his FMLA request, dating back to December 8, 2004.[7] In finding that the Commission should have accepted Homer’s late application, the arbitrator considered the fact that Homer had been offered the chance to file an FMLA request on two previous occasions, with the opportunity to receive retroactive application. Notwithstanding these prior offers, Homer never filed an FMLA application, testifying that the FMLA was a “crutch” and that he “didn’t like to ask for help.” Homer offered no other explanation for his repeated failure to seek medical leave benefits to excuse his frequent absences from work.
Ultimately, the arbitrator concluded that the evidence failed to demonstrate “that the Commission had a right to elevate its [SLP] progressive disciplinary rights above its obligation to consider Lt. Homer’s FMLA application.” He also found that Homer’s “January 25, 2005 application, as supplemented [in April 2005], warranted approval of retroactive FMLA... due to . . . his seniority, and . . . the Commission’s demonstrated willingness in the past to extend retroactive intermittent FMLA leave to Lt. Homer.” Based on this finding, the arbitrator concluded that Homer’s December 8, 2004 absence should not have been considered by the Commission in applying discipline under the SLP, and thus, the termination violated the SLP.
The arbitrator justified his award stating “I am satisfied that I am, under the language of this Agreement, empowered to consider the FMLA statute and to interpret it as part of my finding and [a]ward in this case. I am satisfied that the FMLA has been incorporated into this contract by reference to Article 20, and that said Article is subject to the grievance and arbitration procedures.”
Article 20 of the CBA, entitled “Family Leave,” provides that “[a]n employee shall be granted up to twelve (12) weeks unpaid family leave in order to attend the birth, adoption, or care of a new child ... or for the illness of a spouse, child or parent . . . The employer shall have the right to designate any qualified leave as FMLA leave.” In contrast, Article 21 of the CBA, entitled “Medical Leave,” provides for a one-year “unpaid medical leave upon the submission of medical substantiation deemed adequate by the Department.” Article 21 makes no mention of any right to designate medical leave as FMLA leave. Moreover, the record does not reflect that Homer ever applied for either family leave under Article 20, or medical leave under Article 21.
DISCUSSION
“The role of the court in reviewing an arbitrator’s award is limited.” Sheriff of Suffolk County v. AFSCME Council 93, 67 Mass.App.Ct. 702, 705 (2006). “Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” Plymouth-Carver Regional School Dist v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). However, the question whether an award exceeds the power vested in an arbitrator is “always open to judicial review.” Local 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Authority, 392 Mass. 407, 410-11 (1984). Therefore, in order to prevail in this action, the Commission must demonstrate that “the arbitrator] ] exceeded [his] powers ...” G.L.c. 150C, §11(a)(3).
“The power and authority of an arbitrator is ordinarily derived entirely from a [CBA].” School District of Beverly v. Geller, 435 Mass. 223, 228-29 (2001). “[A]n arbitrator’s award is legitimate only so long as it draws its essence from the [CBA] that he is confined to interpret and apply.” Id. at 228. Moreover, “when an agreement specifically enumerates grounds for dismissal, the arbitrator does not have the authority to judge whether discharge is an excessive penalty for the violation committed.” Id. at 232. “[A]n ‘arbitrator may not ignore the plain words of [a] contract.’ ’’ Sheriff of Suffolk County, 67 Mass.App.Ct. at 706, quoting Grobet File Co. of America, Inc. v. RTC Systems, Inc., 26 Mass.App.Ct. 132, 134-35 (1988). “However, ‘[i]f there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon the arbitrators of civil disputes.’ ” Id., quoting Grobet File Co. of America, 26 Mass.App.Ct. at 135.
In this case, the CBA expressly incorporates the SLP, which provides for discharge once an employee exceeds a certain number of unexcused absences. Further, the implementing agreement provides that the disciplinary measures imposed by the SLP cannot be found to violate Article 7 of the CBA. As agreed by the parties and the arbitrator, Homer’s December 8, 2004 absence subjected him to termination under the SLP. Under the provisions of the CBA and the prece- *30 dentin Geiier, therefore, the arbitrator had no “authority to judge whether discharge [was] an excessive penalty for the violation committed.” 435 Mass. at 232.
However, in deviating from the discipline mandated by the SLP, the arbitrator relied on federal statutory law to find that the triggering absence should have qualified as FMLA leave, and therefore, should have been excused. Concluding that the fourth quarter absence should have been excused, the arbitrator reasoned that Homer’s termination was imposed in violation of the SLP, and therefore, was unreasonable under Article 7 of the CBA. Thus, the court must determine whether the arbitrator exceeded his authority in applying the FMLA to the dispute before him.
“In the collective bargaining context, the arbitrator is ordinarily empowered to interpret the underlying contract and the extent of his powers thereunder.” Getter, 435 Mass. at 229. However, as noted above, the arbitrator in this case was “without power to alter, amend, add to, or detract from the language of [the CBA].” CBA Article 8, §5. The Appeals Court recently construed identical contract language. See Sheriff of Suffolk County, 67 Mass.App.Ct. at 706.
In Sheriff of Suffolk County, a previously retired and disabled employee, who later returned to active duty as a correction officer pursuant to G.L.c. 32, §8, alleged that the Sheriff failed to properly recognize his seniority. Id. at 703. The arbitrator assigned to the dispute interpreted G.L.c. 32, §8, finding that the Sheriff was required to recognize the officer’s seniority credits. Id. at 704. In vacating the arbitrator’s decision, the trial court found that “[t]here is no justification in law for an arbitrator to determine a statutoiy right when the language of the [CBA] limits the power of an arbitrator to interpretation of its express terms.” Id. at 705. On appeal, the Appeals Court affirmed the trial court, holding that because, “the arbitrator went outside the agreement to craft his award, he exceeded the authority granted to him by the parties.” Id. at 707. Thus, absent express authority to apply the FMLA, the arbitrator in this case had no authority to determine Homer’s rights under the FMLA.
To support his authority to adjudicate Homer’s rights under the FMLA, the arbitrator relied on the family leave provisions of Article 20. However, Article 20 had no application to the dispute before him. In full, Article 20 states:
An employee shall be granted up to twelve (12) weeks unpaid family leave in order to attend the birth, adoption or care of a new child in the employee’s immediate household; or for the illness of a spouse, child or parent. The employee may use accumulated vacation, sick leave, and/or other leave days for the above-referenced reasons. If sick leave is used, it shall not be considered as sick leave for the purpose of monitoring sick leave usage. The employer shall have the right to designate any qualified leave as FMLA leave.
Based on its plain language, Article 20 makes no provision for leave based on an employee’s own sickness or illness. Rather, it applies to matters concerning the employee’s family, for which the employee seeks leave to attend to. This distinction is even more apparent in light of Article 21, which provides for medical leave for an employee’s personal illness or sickness.[8] Furthermore, Article 20 plainly grants the Commission, and not the Association, the employee, or the arbitrator, the right to designate family leave as FMLA leave.[9] The mere mention of the FMLA in Article 20 cannot be read to confer authority, on an arbitrator to adjudicate FMLA claims, especially when Article 20 is wholly inapplicable to the present dispute.
Although the Association argues that a reasonable interpretation of the SLP, which provides that “(a]bsences . . . excused as family, medical or other approved leave shall not be considered undocumented sick time,” warrants the conclusion that the arbitrator had authority to judge the merits of an FMLA claim, this court disagrees. The arbitrator has authority to resolve disputes concerning an employee’s right to family leave or medical leave, because such rights aire created by the CBA. However, no such authority exists with respect to independent statutoiy rights, where the CBA does not expressly grant the arbitrator the power to determine such rights. Because the arbitrator in this case “went outside the [CBA] to craft his award, he exceeded the authority granted to him by the parties.” Sheriff of Suffolk County, 67 Mass.App.Ct. at 707. Thus, his award must be vacated.
ORDER
For the above-stated reasons, the arbitration award is hereby VACATED. The Association’s Motions to Confirm and Compel Compliance with Arbitration Award are DENIED, and the Commission’s Motion to Vacate Arbitration Award is ALLOWED.

Homer began working as a Dispatcher for the Commission’s Boston Emergency Medical Services Division (“EMS”) in 1982. In 2000, he was promoted to Lieutenant in the Dispatch Operations Unit.

The SLP is incorporated into the CBA by agreement.

The parties and the arbitrator agree that this provision is equivalent to a “just cause” provision.

This suspension was not grieved by Homer or the Association.

The SLP provides that “[ajbsences that the Commission has excused as family, medical, or other approved leave shall not be considered undocumented sick time.”

Homer’s initial FMLA application, submitted on January 25, 2005 was incomplete. On February 3, 2005, the Commission’s Human Resources Director, who was apparently unaware of the pending disciplinary proceedings against Homer, requested additional information from Homer. The complete FMLA application was not submitted by Homer until sometime in April 2005.

After receipt of Homer’s completed FMLA application in April 2005, the Commission denied his request on the grounds that he was no longer employed by the Commission.

The record does not reflect any application by Homer for medical leave under Article 21; nor was it ever raised as an *31 issue at arbitration. Moreover, Article 21 does not afford the Commission any right to designate medical leave under Article 21 as FMLA leave.

Presumably, the CBA provides this right to the Commission to prevent an employee from seeking a twelve-week leave pursuant to Article 20, and then in the same period, seeking an additional twelve-week leave pursuant to the FMLA.