SCHOOL COMMITTEE OF NEEDHAM *vs*. NEEDHAM EDUCATION
ASSOCIATION & another.[1]

Norfolk. September 8, 1986. — December 3, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*School and School Committee,* Termination of employment, Collective
bargaining, Arbitration. *Contract,* Collective bargaining contract. *Arbi-
tration,* Collective bargaining, School committee, Authority of arbitra-
tor, Judicial review. *Words,* "Just cause."

In arbitrating a grievance arising from a teacher's dismissal by a school com-
mittee, the arbitrator acted correctly in applying the standard of "just
cause," to which the school committee had voluntarily bound itself in
the collective bargaining contract, rather than the "good cause" standard
under G. L. c. 71, § 42. [712-713]

Where, in an arbitration arising from a teacher's dismissal by a school com-
mittee, the arbitrator's award of reinstatement was based upon his finding
that the school committee had not fulfilled its contractual obligation to
afford the teacher "needed support" during an evaluative process, the
award was held to have drawn its essence from the collective bargaining
contract. [713]

General Laws c. 150E, § 8, contemplates that an arbitrator may order rein-
statement of a public employee in appropriate circumstances. [713-714]

CIVIL ACTION commenced in the Superior Court Department
on December 12, 1984.

The case was heard by *Paul K. Connolly,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Phillips Axten* for the plaintiff.

*Eileen A. Cenci* for the defendants.

*Michael J. Long* for Massachusetts Association of School
Superintendents, amicus curiae, submitted a brief.

---

[1] Paul Needle.

*Austin Broadhurst* for Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

NOLAN, J. Paul Needle (teacher) was a sixth-grade tenured teacher at the Newman Middle School in Needham. After a series of hearings before the school committee he was dismissed in August, 1983. He claimed his right to arbitration under the collective bargaining agreement (agreement). After a hearing, the arbitrator made an award dated November 23, 1984, restoring the teacher to his position without benefit of back pay. The school committee sought to vacate the award but a judge in the Superior Court denied the application to vacate and confirmed the award pursuant to G. L. c. 150C, § 11 (*d*) (1984 ed.). The school committee appealed and we granted its application for direct appellate review. We affirm.

The arbitrator framed the issue before him[2] as follows: "Did the dismissal of [the teacher] violate Article 11c — Section 1 of the [agreement] . . . ? If so, what shall the remedy be?" The pertinent portion of art. 11c, § 1, provides that "no tenure teacher shall be discharged without just cause. . . . It is recognized that this Article provides alternative remedies either statutory or through arbitration to tenure teachers in the case of dismissal."

The school committee and the defendant Needham Education Association had negotiated an evaluation system for tenured teachers which resulted in a document referred to as "The Handbook."[3] The Handbook was incorporated by reference

---

[2] The parties were unsuccessful in their efforts to stipulate a framing of the issue and left it to the arbitrator.

[3] A word about the evaluation process is necessary. There are two evaluation approaches: the formative approach and the summative approach. The language of The Handbook describes them as follows: "The Formative Approach focuses on objectives, progress, and improvement. The emphasis is upon meeting mutually defined objectives, not upon giving summative judgments.

"The Formative Approach is used with supervisees unless or until it is determined that the Summative Approach is needed.

"The Summative Approach can only be entered into from the Formative Process. This is a process which provides needed support for teachers to be successful, and resolve issues surfaced in the Formative Process. Any party may request the Summative Process."

into art. 11 of the agreement and first put into effect during the 1981-1982 school year. One third of all tenured teachers in Needham were to be evaluated each year, making each teacher subject to evaluation every three years. During the 1981-1982 school year, 108 tenured teachers were designated for evaluation and all but nine of these were randomly selected. Needle was one of the nine teachers selected by the superintendent because the parents of eleven children had requested in writing that their children not be placed in his sixth-grade class.

After a conference between the teacher and his supervisor, a list of "mutually developed objectives" was drawn up. There followed a series of observations of the teacher's classroom performance by his supervisor. The evaluation then entered the summative stage. New and more specific objectives were mutually formulated by the teacher and his supervisor together with a third party selected by the teacher as required in the summative stage. The third party chosen by the teacher was an assistant superintendent. More classroom visitations and evaluations followed, culminating in a memorandum from the assistant superintendent to the superintendent recommending dismissal of the teacher for failure to comply with The Handbook and for failure to maintain minimum performance standards.

While agreeing with the committee that the teacher's conduct failed to meet minimum standards, the arbitrator faulted the school committee for the failure of the third party to render the support to the teacher which The Handbook demanded. The teacher needed support "far in excess of that offered," the arbitrator ruled, and the "failure of the Committee to offer [the teacher] the adequate level of support needed by him under the circumstances of this case resulted in that dismissal being without just cause." The arbitrator then provided that the committee "shall have the right at its discretion to place [the teacher] into the evaluation process for tenured teachers at the level it considers appropriate . . . ."

The appeal raises three issues: (1) did the arbitrator exceed his powers by substituting his judgment for that of the school committee as to whether there was just cause for the teacher's

dismissal; (2) did the arbitrator exceed his powers by issuing an award which did not draw its essence from the collective bargaining agreement; and (3) did the arbitrator exceed his powers by ordering the teacher's reinstatement as a remedy for the contractual violation.

1. *Just cause*. In the agreement the school committee agreed that no tenured teacher was to be dismissed without "just cause." The school committee maintains that the arbitrator exceeded his powers in applying the "just cause" standard because it is broader than the "good cause" that G. L. c. 71, § 42 (1984 ed.), requires before a tenured teacher can be dismissed. Assuming, without deciding, that this proposition is true, we find the school committee's argument lacking in merit.

The agreement clearly stipulated that the interpretation of its provisions was for the arbitrator to determine "in accordance with the commonly accepted meaning of words used herein." The phrase "just cause" is found in most public sector bargaining agreements and its general meaning is well established. F. Elkouri & E. Elkouri, How Arbitration Works 652-653 (4th ed. 1985). The arbitrator merely applied the standard to which the school committee voluntarily bound itself. The arbitrator's task is to effectuate the intent of the parties. "We do not review the arbitrator's interpretation of the agreement, since that subject is committed to the arbitrator by the agreement." *School Comm. of Hanover* v. *Curry*, 369 Mass. 683, 685 (1976). The school committee cannot be heard to complain that the arbitrator's decision was not in its favor. If the school committee believes that an arbitrator's decision-making power is too extensive in cases involving grievances concerning dismissals of tenured teachers, its remedy lies at the bargaining table. *Cape Elizabeth School Bd.* v. *Cape Elizabeth Teachers Ass'n*, 459 A.2d 166, 172-173 (Me. 1983). *Port Washington Union Free School Dist.* v. *Port Washington Teachers Ass'n*, 45 N.Y.2d 746, 748 (1978).

The school committee further contends that since the judicial standard of review of the decision of a school committee is strictly limited, the arbitrator's authority is equally narrow.

Even if the arbitrator has exercised greater power than a reviewing court could exercise under c. 71, § 43A, we have held today that the arbitrator has such power. *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional School Dist.*, *ante* 695 (1986). The power derives from the provision of G. L. c. 150E, § 8.

2. *Whether the award draws its essence from the contract.* We note that an arbitrator's award is entitled to judicial respect insofar as it draws its essence from the collective bargaining agreement. That is to say, the award will be upheld unless the arbitrator's interpretations and conclusions are substantially implausible or irrational. *School Comm. of Waltham* v. *Waltham Educators Ass'n, ante* 703, 705-706 (1986). *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 188 (1984).

The arbitrator determined that the school authorities did not provide the teacher with the "needed support" in the summative stage of the evaluation process. Since the phrase "needed support" is not defined in the agreement, the arbitrator was well within his power to determine what measures should have been undertaken by the teacher's superiors in order that the school committee's contractual obligations be fulfilled. The arbitrator discharged his duty "to find the facts, construe the provisions of the agreement, determine whether those provisions have been violated, and determine whether any violations [that he found] constitute grievances within the meaning of the arbitration provisions of the agreement." *Wachusett Regional Dist. School Comm.* v. *Wachusett Regional Teachers Ass'n,* 6 Mass. App. Ct. 851, 851 (1978). Hence, there is no support for vacation of the award on the ground that it does not draw its essence from the agreement.

3. *The arbitrator's remedial power.* The school committee, in its final argument, maintains that the arbitrator's award reinstating the teacher to his position without back pay was in excess of the power conferred on him. The judge disagreed because he concluded that this case involved procedural violations and was controlled by *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 127

(1977) (reinstatement of nonsupervisory teacher not rehired because of breakdown of required teacher evaluation procedures was a proper remedy).

We do not find the teacher's reinstatement inappropriate. We regard as only logical that, when the Legislature in G. L. c. 150E, § 8, endowed the arbitrator with the broad authority to resolve grievances arising out of "suspension, dismissal, removal or termination," it contemplated that the arbitrator might order reinstatement in certain cases. To hold otherwise would seriously impair the entire arbitration process.

*Judgment affirmed.*