860                      69 Mass. App. Ct. 860 (2007)

School Committee of Hull *v*. Hull Teachers Association, MTA/NEA.

## School Committee of Hull *vs*. Hull Teachers Association, MTA/NEA.

No. 06-P-949.

Plymouth. March 9, 2007. - August 27, 2007.

Present: Perretta, Brown, & Cypher, JJ.

*Education Reform Act. School and School Committee,* Arbitration, Collective bargaining, Professional teacher status, Termination of employment. *Arbitration,* School committee, Collective bargaining, Judicial review, Authority of arbitrator. *Public Employment,* Termination, Reinstatement of personnel.

Discussion of the rights provided by the Education Reform Act of 1993 to teachers without professional teacher status. [862-863]

Nothing in the Education Reform Act of 1993 prohibited the arbitration of a grievance arising from the decision of a local school committee (committee) not to renew the employment of a teacher who had not attained professional teacher status, where the central issue was the teacher's claim that the committee had dismissed her without following the evaluation procedures agreed to by the committee in the relevant collective bargaining agreement (CBA) [863-864], and the arbitrator properly could conclude that there had been a violation of the CBA from the failure to perform the evaluations and did not exceed his authority by ordering reinstatement of the teacher in these circumstances [864-866].

Civil action commenced in the Superior Court Department on November 16, 2004.

The case was heard by *Suzanne V. DelVecchio,* J.

*James A. Toomey* for the plaintiff.

*Americo A. Salini, Jr.,* for the defendant.

Cypher, J. The school committee of Hull (committee) appeals from a judgment of the Superior Court affirming an arbitrator's award. The arbitrator concluded that the committee had violated the collective bargaining agreement (CBA) by failing to comply with certain requirements for the evaluation of Alice Haseltine,

69 Mass. App. Ct. 860 (2007)                              861

School Committee of Hull *v.* Hull Teachers Association, MTA/NEA.

a teacher who had not attained professional teacher status.[1] The committee argues that the Education Reform Act of 1993 (Act) made substantial changes in school committee governance and that, as a result, Haseltine's grievance was not arbitrable because it involved a decision not to renew the employment of a teacher who had not attained professional teacher status.[2] The committee goes on to argue that because Haseltine lacked such status, she should be treated as an at-will employee. We affirm.

*Background.* Haseltine had been employed full time by the committee since 2001. She divided her time forty per cent as a technology instructor and sixty per cent as a guidance counsellor at Hull High School. On May 30, 2003, she was called to the office of the principal, Russell Goyette, and given a letter which stated: "Pursuant to . . . General Laws, Chapter 71, Section 41, I am sorry to inform you that we will not be renewing your contract for the 2003-2004 school year." No reason was given. The Hull Teachers Association (association) filed a grievance on Haseltine's behalf. When that procedure did not resolve the grievance, the association sought arbitration of the grievance. The stipulated issues presented to the arbitrator were: "Did the School Committee violate Article VI, Sections 6, 7, 8, 10, 11, 12 and Article XLIII of the Association's collective bargaining agreement in the manner in which it evaluated the Grievant prior to the decision not to reappoint her for the 2003-04 school year? If so, what shall be the remedy?"

The arbitrator concluded that the committee had failed to comply with certain requirements for the evaluation of Haseltine, as stated in the parties' CBA. In the award, the arbitrator ordered that Haseltine be reinstated to her position. The committee sought to vacate the arbitrator's award in the Superior Court. G. L. c. 150C, § 11. The association sought an order confirming the award. G. L. c. 150C, § 10.

A judge concluded that the arbitrator did not exceed his

---

[1]The Education Reform Act of 1993, St. 1993, c. 71, § 43, "replaced the concept of 'tenure' with 'professional teacher status.' " *Lyons* v. *School Comm. of Dedham,* 440 Mass. 74, 76 n.3 (2003).

[2]The Act, which contains some 105 provisions, significantly altered the management of public schools. See generally *School Comm. of Pittsfield* v. *United Educators of Pittsfield,* 438 Mass. 753, 759-760 (2003).

authority, denied the committee's request to vacate the award, and allowed the association's motion to confirm the award.

*Discussion.* We proceed under familiar principles governing judicial review of decisions of arbitrators. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990) (courts inquire into arbitration only to determine if arbitrator has exceeded scope of authority or decided matter based on fraud, arbitrary conduct, or procedural irregularity in hearings).

We first examine the statutory framework established by the Act, applicable to this case, to determine if the arbitrator correctly determined that the scope of his authority in considering the grievance was not limited by the Act. Such a determination belongs with the courts. Cf. *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 230 (2001) (responsibility for interpreting statute and arbitrator's authority thereunder remains with court).

The committee relies on a provision in G. L. c. 71, § 42, that teachers without professional teacher status "shall otherwise be deemed employees at will."[3] The committee asserts that at-will employees may be dismissed at any time, for any reason or no reason. The committee's argument ignores the requirements of the preceding sentences in c. 71, § 42. The statute makes clear that after the initial ninety days of service a teacher without professional teacher status must be given a written notice of intent to dismiss, along with an explanation of the grounds for dismissal. See and compare *Saxonis* v. *Lynn*, 62 Mass. App. Ct. 916, 917 (2004), cert. denied, 546 U.S. 819 (2005) ("rudimentary rights to notice and a hearing prior to dismissal" accrue under c. 71, § 42, after retention for ninety days).

Section 42 was rewritten by St. 1993, c. 71, § 44. The ver-

---

[3]General Laws c. 71, § 42, second par., inserted by St. 1993, c. 71, § 44, states: "A teacher who has been teaching in a school system for at least ninety calendar days shall not be dismissed unless he has been furnished with written notice of intent to dismiss and with an explanation of the grounds for the dismissal in sufficient detail to permit the teacher to respond and documents relating to the grounds for dismissal, and, if he so requests, has been given a reasonable opportunity within ten school days after receiving such written notice to review the decision with the principal . . . , and to present information pertaining to the basis for the decision and to the teacher's status. . . . Teachers without professional teacher status shall otherwise be deemed employees at will."

69 Mass. App. Ct. 860 (2007) 863

School Committee of Hull v. Hull Teachers Association, MTA/NEA.

sion of the statute in effect prior to 1993 provided that a teacher "not employed at discretion" who had served for more than ninety days could not be dismissed without prior notice and, if requested, a written statement of "cause or causes," as well as a hearing before the school committee. The Act did not materially alter these "rudimentary rights" of teachers without professional teacher status. Accordingly, whatever may be the meaning of the statement that teachers without professional teacher status "shall otherwise be deemed employees at will," contrary to the committee's view, such teachers cannot summarily be dismissed without observing the rudimentary rights provided by statute.

While the Act significantly gave principals "primary responsibility for hiring, disciplining, and terminating teachers [and other assigned personnel]," G. L. c. 71, § 59B, the "Legislature did not grant principals unfettered discretion . . . ." *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 761 (2003). They must follow the strict procedural and substantive provisions in G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44. Cf. *ibid.* "[B]y enacting § 59B, the Legislature carefully balanced school-based management reforms with the district-wide needs of school systems and the collective bargaining rights of school employees over the terms and conditions of their employment." *Id.* at 762. In fact, G. L. c. 71, § 38, mandates that a superintendent of schools "shall require the evaluation . . . of teachers without professional teacher status every year," and that the procedures for conducting those evaluations "shall be subject to the collective bargaining provisions of [c. 150E]." G. L. c. 71, § 38, third par., as amended through St. 1993, c. 71, § 40 (essentially unchanged from version of statute in effect prior to 1993).

The central issue in Haseltine's grievance, and the subject of arbitration, was her claim that the committee dismissed her without following the evaluation procedures set forth in the CBA.[4] We think it readily apparent that those procedures fall within the statutory framework that provides for the evaluation

---

[4]Article XLIII of the CBA, § 43.2, provides that all Tier I nonprofessional status teachers, such as Haseltine, "shall receive a written summative evaluation based upon a minimum of three (3) formal observations." Section 43.3

864       69 Mass. App. Ct. 860 (2007)

School Committee of Hull *v.* Hull Teachers Association, MTA/NEA.

of teachers; provides notice and hearing protections for teachers without professional status; and preserves the management prerogatives of the principal and the school committee. "[T]he alleged failure to follow certain practices agreed to by the school committee is arguably a grievance under the terms of the collective bargaining agreement. The question of the arbitrability of these asserted grievances properly may be submitted to an arbitrator and, if the arbitrator concludes that the issue is arbitrable, he may pass on the question whether the school committee adhered to its obligations." *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. 116, 120 (1977).

For these reasons, we conclude that nothing in the Act prohibited arbitration of Haseltine's grievance, and that the arbitrator properly derived his power and authority from the CBA. Compare *School Dist. of Beverly* v. *Geller*, 435 Mass. at 230-231. See generally *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113 (1977) (school committee may not surrender its authority to make tenure decisions but may bind itself to follow certain procedures).

The relevant facts underlying the grievance indicate that during her first year (2001-2002) Haseltine was never formally observed in the classroom and received no written observation reports or a summative evaluation by the principal then in office, as required by the CBA. After Goyette became principal in February, 2002, Haseltine asked about observations and evaluation, but was told they would not be done. Haseltine was reappointed by Goyette to a second year. There were no formal observations in her second year (2002-2003) until May, when three observations were made, but no post observation reports or summative evaluations were prepared. No observations or evaluations of Haseltine's performance as a guidance counselor were made.

The arbitrator properly could conclude that there had been a violation of the CBA from the failure to perform the evaluations.

requires the evaluator to conduct at least three formal and three informal observations, and to share his notes with the teacher afterward.

 Section 43.5 states that "[t]he right to appeal is a critical element of the Hull Teacher Evaluation Process," and describes a four-step procedure of appeal to the superintendent of schools.

He did not transcend the limits of the agreement to arbitrate. Compare *Lawrence* v. *Falzarano*, 380 Mass. 18, 28-29 (1980); *School Dist. of Beverly* v. *Geller, supra* at 230-235.[5]

In his award, the arbitrator ordered Haseltine reinstated.[6] In the Superior Court, the committee opposed reinstatement on the ground that the technology courses taught by Haseltine would not be offered because of limited enrollment. Nevertheless, her position was not eliminated, and another teacher was appointed with the same split duties (forty per cent teaching and sixty per cent guidance counselling). The Superior Court judge concluded that ordering reinstatement did not impinge on the committee's authority because a full-time position would have been available had Haseltine's contract been renewed. In this appeal, the committee does not dispute that conclusion and, in any event, makes no separate argument on reinstatement.

We conclude that the arbitrator did not exceed his authority by ordering reinstatement of Haseltine in these circumstances. Because Haseltine's nonrenewal was not based on a conclusion drawn from an evaluation of her performance as a teacher, the order did not impinge on the ultimate authority of the principal or the committee. The order of reinstatement simply required the principal and the committee to follow the procedures agreed to in the CBA. There is ample authority and precedent for such a reinstatement.

"The agreement to follow certain procedures preliminary to exercising its right to decide a tenure question, and to permit ar-

---

[5]The committee complains that the arbitrator's decision requires it to comply with an "elaborate set of conditions," contradictory to its assertion of at-will status, and to meet a standard for nonrenewal which is higher than the "just cause" standard applicable to dismissal of teachers with professional status. There is no merit in these complaints. The arbitrator only ordered the committee to follow the procedures it agreed to in the CBA. The arbitrator's decision does not in any way direct how the teaching standards in Appendix E of the CBA are to be substantively applied.

[6]The arbitrator's award stated: "The School Committee violate[d] [several provisions] of the Association's collective bargaining agreement in the manner in which it evaluated the Grievant prior to the decision not to reappoint her for the 2003-04 school year. Haseltine is to be reinstated to her position in the Hull School system and made whole retroactive to the end of her prior contract. Upon her reinstatement, she will be considered a Tier [I] teacher without professional teacher status. I retain jurisdiction for purposes of remedy only."

bitration of a claim that it has failed to follow those procedures, does not impinge on a school committee's right to make the ultimate tenure decision." *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 114. "[R]einstatement of a nonsupervisory teacher who had been treated unfairly because of the breakdown of required teacher evaluation procedures would not impinge on a school committee's nondelegable prerogatives. We agree with the conclusions of the Court of Appeals of New York in *Board of Educ., Bellmore-Merrick Cent. High Sch. Dist., Nassau County* v. *Bellmore-Merrick United Secondary Teachers, Inc.*, 39 N.Y.2d 167, 173 (1976), where the court said, 'The temporary reinstatement awarded here does not eviscerate the public policy mandate that a board of education evaluate the requisite competence and merit of a teacher before the conferral of tenure. . . . The award merely requires that . . . [the board of education] follow procedures it has agreed to adopt in its decision-making process in the area of tenure.' (Citations omitted.)" *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Assn.*, 372 Mass. 121, 127 (1977). "[R]einstatement . . . was an appropriate remedy where the school committee's failure to reappoint took place 'without observance of [the notice and hearing] procedures prescribed by [the] collective bargaining agreement.' " *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 793 (1977), quoting from *School Comm. of W. Springfield* v. *Korbut*, 4 Mass. App. Ct. 743, 746 (1976).

*Judgment affirmed.*