NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-701                                    Appeals Court

GROTON-DUNSTABLE REGIONAL SCHOOL COMMITTEE  vs.  GROTON-DUNSTABLE EDUCATORS ASSOCIATION.

No. 14-P-701.

Middlesex.     March 9, 2015. - July 20, 2015.

Present:  Trainor, Wolohojian, & Carhart, JJ.

School and School Committee, Professional teacher status, Termination of employment.  Education Reform Act. Arbitration, Collective bargaining, School committee. Public Employment, Collective bargaining, Termination.

Civil action commenced in the Superior Court Department on November 4, 2013.

The case was heard by Robert L. Ullmann, J., on a motion for judgment on the pleadings.

Laurie R. Houle for the defendant.
Howard L. Greenspan for the plaintiff.

WOLOHOJIAN, J.  At issue is whether the defendant union is entitled on behalf of a terminated teacher to pursue arbitration under the provisions of its collective bargaining agreement, or whether it is instead required to pursue arbitration under G. L.

c. 71, § 42, amended by St. 1993, c. 71, § 44.  Because we conclude that G. L. c. 71, § 42, provides the exclusive route to arbitrate the termination of a teacher with professional teacher status (previously known as tenure), we affirm the judgment resulting from the allowance of the plaintiff school committee's motion for judgment on the pleadings.

The school committee and the union entered into a collective bargaining agreement (CBA) that covered the period September 1, 2011, through August 31, 2014.  One article of the CBA governed the arbitration of grievances, and set out detailed procedures for such arbitration.  Another article of the CBA provided that teachers would not "be disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantages or salary increase without just cause."

Melissa Pooler, a teacher with professional teacher status,[1] was terminated by the school committee on July 16, 2013.  After the union's grievance on behalf of Pooler was denied,[2] the union claimed arbitration under the CBA.  The school committee

---

[1] See G. L. c. 71, § 41, amended by St. 1996, c. 99 ("a teacher. . . who has served in the public schools of a school district for three previous consecutive school years shall be . . . entitled to professional teacher status").

[2] At the same time, Pooler filed a petition for arbitration under G. L. c. 71, § 42.  Subsequently, however, she and the union requested that her petition be held in abeyance to allow the union to pursue a grievance on her behalf under the CBA.

responded by suing to stay arbitration pursuant to G. L. c. 150C, § 2. The school committee's motion for a preliminary injunction was allowed, as was its subsequent motion for judgment on the pleadings. The latter is the subject of this appeal.[3]

Section 42 of G. L. c. 71 provides, as pertinent here, that teachers with professional teacher status (such as Pooler) may seek to have an arbitrator review their termination in accordance with the procedures specified in the statute. Section 42 also provides that such a teacher "shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight of this chapter or other just cause." Of particular importance here, § 42 provides that "[w]ith the exception of other remedies provided by statute, the remedies provided hereunder shall be the exclusive remedies available to teachers for wrongful termination."

The union contends that, despite the exclusivity language just quoted, § 42 does not preclude the union from pursuing arbitration under the provisions of the CBA. Relying on three

_____

[3] Our review is de novo. Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 600 (2010).

cases that predate the Education Reform Act of 1993,[4] the union contends that § 42 does not limit or override G. L. c. 150E, § 8, which allows parties to include arbitration provisions in collective bargaining agreements.[5] It follows, in the union's view, that § 42 is not the exclusive avenue through which a terminated teacher, or the union on the teacher's behalf, can pursue arbitration.

It is not surprising that the union is unable to point to any authority dating after 1993, when the Education Reform Act (Act) was enacted. The Act made sweeping changes to the arbitration procedures available to terminated teachers, as well as to the scope and authority of arbitrators, and the standards those arbitrators are to apply.[6] Recognizing that these changes might be in conflict with arbitration provisions in then-existing collective bargaining agreements, the Act provides in

---

[4] Old Rochester Regional Teacher's Club v. Old Rochester Regional Sch. Dist. Comm., 398 Mass. 695 (1986); School Comm. of Waltham v. Waltham Educators Assn., 398 Mass. 703 (1986); School Comm. of Needham v. Needham Educ. Assn., 398 Mass. 709 (1986).

[5] "The parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement." G. L. c. 150E, § 8, amended by St. 1989, c. 341, § 80.

[6] "The statutory scheme governing teacher dismissals set forth in G. L. c. 71, § 42, was enacted as part of the [Education] Reform Act, which brought broad-based changes to the funding and governance structure of the public education system in Massachusetts." School Comm. of Lexington v. Zagaeski, 469 Mass. 104, 112 (2014).

an uncodified provision that § 42 "shall not apply to employees subject to collective bargaining agreements executed prior to the effective date of this act insofar as such collective bargaining agreements are in conflict with said section[]."  St. 1993, c. 71, § 77.  However, the Legislature clearly mandated that "[c]ollective bargaining agreements effective after the date of this act shall be subject to the provisions of said section[] [42]" (emphasis added).  Ibid.  The CBA at issue in this case was negotiated almost twenty years after the Act was enacted.  The exclusivity provision of § 42 accordingly applies, and the union had no right to pursue arbitration under the CBA. Its remedy lies exclusively through § 42.

The union also argues that Pooler is entitled to have her termination reviewed under the "just cause" standard provided in the CBA, rather than the standard contained in § 42.  But since the enactment of the Act, our cases have consistently held that the source, authority, and scope of arbitration for terminated teachers derive from § 42, not from contract -- regardless of the existence or terms of a collective bargaining agreement. See, e.g., School Dist. of Beverly v. Geller, 435 Mass. 223, 229-230 (2001); Atwater v. Commissioner of Educ., 460 Mass. 844, 856-857 (2011); School Comm. of Lexington v. Zagaeski, 469 Mass. 104, 111-112 (2014); School Comm. of Chicopee v. Chicopee Educ. Assn., 80 Mass. App. Ct. 357, 364-365 (2011).  The school

committee's decision to terminate Pooler must accordingly be assessed under the standards of G. L. c. 71, § 42.  <u>Zagaeski</u>, 469 Mass. at 113.

For these reasons, arbitration under the CBA was properly stayed.

<u>Judgment affirmed</u>.