NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-103                                    Appeals Court

SPENCER-EAST BROOKFIELD REGIONAL SCHOOL DISTRICT  vs.  SPENCER-EAST BROOKFIELD TEACHERS' ASSOCIATION.

No. 17-P-103.

Worcester.       January 16, 2018. - June 4, 2018.

Present:  Trainor, Massing, & Singh, JJ.


School and School Committee, Arbitration, Collective bargaining, Termination of employment.  Arbitration, School committee, Collective bargaining.  Public Employment, Collective bargaining, Termination.  Education Reform Act.  Practice, Civil, Stay of proceedings, Moot case.


Civil action commenced in the Superior Court Department on May 13, 2016.

An application for a stay of arbitration was heard by Brian A. Davis, J., and entry of judgment was ordered by David Ricciardone, J.


Laurie R. Houle for the defendant.
James P. Hoban for the plaintiff.


TRAINOR, J.  The Spencer-East Brookfield Teachers'

Association (association) appeals from a judgment of the

Superior Court permanently staying the grievance arbitration

proceeding commenced by the association before the Department of Labor Relations (DLR).  The association argues that the arbitration became moot once the teacher involved withdrew his grievance, and, thus, the matter should have been dismissed.  At the same time, the association argues that the teacher had an absolute right to arbitrate an alleged collective bargaining agreement (CBA) violation that preceded his termination.  The association maintains that it is irrelevant that the teacher did not have professional teacher status, that he had been employed for less than ninety days, and that reinstatement was the remedy being sought.  We affirm.[1]

Background.  The Spencer-East Brookfield Regional School District (district) and the association entered into a CBA that covered the period July 1, 2015, through June 30, 2018.  Edward Suglia was hired by the district in December, 2015.  His employment was terminated on January 15, 2016, after approximately forty-four days of employment with the district.  On January 19, 2016, the association filed a grievance on behalf of Suglia which asserted that his "rights under the Collective Bargaining Agreement were violated by the school committee . . . when he was terminated . . . without the supports and process

---

[1] Our review of this matter is de novo.  See Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 600 (2010).

that are contractually guaranteed."  The school committee, pursuant to Level Four of Article XX of the CBA, determined that it had no jurisdiction over the grievance because it was a personnel matter, and notified the association that it could proceed to Level Five of the grievance procedure.[2]

In April, 2016, the association filed a petition to arbitrate Suglia's termination with the DLR.  The petition asserted that the termination violated the terms of the CBA because the district had failed in its obligations pursuant to Article XVI and Article VIII of the CBA.[3]  The association specifically asserted that Suglia's termination violated the provisions of the "Educator Evaluation Process" instrument, which provides a procedure for evaluating teacher progress and is incorporated by reference into the parties' CBA.[4]  As

---

[2] "Article XX -- Grievance Procedure" of the CBA outlines the five levels of the grievance process.  Level Five allows the association to seek arbitration if the matter has not been resolved to its satisfaction at Level Four.

[3] "Article XVI -- Teacher/Nurse Evaluation" outlines an evaluation process for all teachers and nurses.  Professional status and nonprofessional status employees are provided different procedures and rights under the article; "Article VIII -- Policy for Cooperating Teachers and Mentors" outlines the relationship between cooperating teachers and student teachers and the requirement that a newly hired teacher be assigned a certified mentor teacher.

[4] The district denied any violation of the evaluation process.

remedies, the petition sought "[r]einstatement; make grievant whole; and any and all additional appropriate remedy."

Pursuant to G. L. c. 150C, § 2(b), the district sought a permanent stay of the grievance arbitration proceedings that had been commenced in the DLR, on the ground that the association's demand was not arbitrable. The Superior Court issued an order, dated September 7, 2016, allowing the district's application to stay the grievance arbitration, and finding that, in the circumstances of this case, the association had no right to grievance arbitration under the CBA and that its remedy existed exclusively in statute. Shortly thereafter, because the matter was pending in the Superior Court, the association sought and obtained a temporary administrative closure of the grievance arbitration proceedings.

The district then notified the DLR of the court's order staying the arbitration proceedings and requested the dismissal of the arbitration proceeding. The association filed an opposition to the requested dismissal. On October 28, 2016, however, the association withdrew its petition for grievance arbitration before the DLR and notified the Superior Court that the "Plaintiff's petition to stay arbitration is now moot and there is no need for further proceedings beyond the decision already issued by this Court." The district responded by seeking entry of judgment permanently staying the grievance

arbitration sought by the association.  A judge of the Superior Court allowed the motion, determining that the issue in dispute had been decided on the merits and had been fully adjudicated. He further found that the issue raised as to whether the CBA "may provide for arbitration of teachers' rights that transcend the ones particular to [the] terminated member . . . merits resolution despite the . . . withdrawal of [the] arbitration petition," and that the matter was not moot.  The association appeals from that determination.

Discussion.  The association argues that the Superior Court should have dismissed, as being moot, the district's motion for entry of judgment because the association had withdrawn the petition for grievance arbitration, with prejudice.  As we have noted, the judge considered and rejected this argument when allowing the district's motion.  See Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298-299 (1975) (in case "of asserted importance, capable of repetition, yet evading review . . . a court should take particular care that judicial review not be foreclosed on the basis of technical mootness" [citations and quotations omitted]).  Here, the association had argued that "the issue presented may deal with important rights of all teachers covered by its collective bargaining agreement, an agreement that the [association] argued at hearing may be 'nullified' by the court action here."  We, however, agree with

the judge that the matter is not moot, and will therefore consider the court's legal holding.

The association argues that it has the right to arbitrate a purported violation of the CBA that preceded the district's termination of Suglia's employment.[5]  Teacher dismissals are governed by the statutory scheme contained in G. L. c. 71, § 42.[6]

---

[5] Significantly, Suglia was terminated from his position on January 15, 2016, but the association filed the grievance on January 19, 2016, claiming that he had been "terminated . . . without the supports and process that are contractually guaranteed."

[6] General Laws. c. 71, § 42, as appearing in St. 1993, c. 71, § 44, reads in pertinent part:

"A teacher who has been teaching in a school system for at least ninety calendar days shall not be dismissed unless he has been furnished with written notice of intent to dismiss and with an explanation of the grounds for the dismissal in sufficient detail to permit the teacher to respond and documents relating to the grounds for dismissal, and, if he so requests, has been given a reasonable opportunity within ten school days after receiving such written notice to review the decision with the principal or superintendent, as the case may be, and to present information pertaining to the basis for the decision and to the teacher's status.  The teacher receiving such notice may be represented by an attorney or other representative at such a meeting with the principal or superintendent.  Teachers without professional teacher status shall otherwise be deemed employees at will.

"A teacher with professional teacher status, pursuant to section forty-one [of this chapter], shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight of this chapter or other just cause."

See Groton-Dunstable Regional Sch. Comm. v. Groton-Dunstable Educators Assn., 87 Mass. App. Ct. 621 (2015). Section 42 provides three different levels of procedural and substantive due process requirements and protections for public school teachers being terminated from their employment.

Teachers with "professional teacher status," which they are entitled to after three school years of consecutive service, are afforded the greatest degree of due process rights and protections.[7] G. L. c. 71, § 41, as appearing in St. 1993, c. 71, § 43. See Downing v. Lowell, 50 Mass. App. Ct. 779, 783-784 (2001); Groton-Dunstable Regional Sch. Comm. v. Groton-Dunstable Educators Assn., supra. The statute provides that teachers with professional teacher status may not be terminated from employment except for "inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight" of chapter 71. G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44. Such a teacher also has the statutory right to receive written notice of the intent to terminate employment

_____

[7] Professional teacher status may also be conferred "upon the recommendation of the principal, . . . to any teacher who has served in the principal's school for not less than one year or to a teacher who has obtained such status in any other public school district in the commonwealth." G. L. c. 71, § 41, as amended through St. 1996, c. 450, § 127.

with an explanation and documentation of the reasons sufficient to allow the teacher to respond.  Finally, such a teacher also has the statutory right to seek review of his or her termination at an arbitral hearing at which he or she may present evidence and call witnesses.  The school district carries the burden of proof at any such hearing.  Ibid.

A lesser degree of due process protection is afforded to public school teachers who have not attained professional teacher status but who have been teaching in a school system for at least ninety calendar days but less than three consecutive school years.  Such a teacher shall not be dismissed unless he or she has been "furnished with written notice of intent to dismiss and with an explanation of the grounds for the dismissal in sufficient detail to permit the teacher to respond and documents relating to the grounds for dismissal."  Ibid.  Such a teacher shall also have the right, if requested, to review the decision to terminate employment with the principal or superintendent and to "present information pertaining to the basis of the decision and to the teacher's status."  Ibid.  The teacher may be represented by an attorney or other representative at such a meeting.  The statute does not provide the right, however, for such a teacher to review the decision to terminate employment by filing a petition to arbitrate.  Ibid.

Lastly, a public school teacher who has not attained professional teacher status and who has held his or her teaching position for less than ninety calendar days has no statutory protections provided by G. L. c. 71, § 42. "Teachers without professional teacher status [(i.e., those teachers who have worked less than ninety calendar days)] shall otherwise be deemed employees at will." Ibid. "Employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all."[8] Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). See Merola v. Exergen Corp., 423 Mass. 461, 464 (1996) (with certain narrow exceptions derived from public policy, "[p]rinciples of employment law permit the termination of employees at will, with or without cause").

General Laws c. 71, § 42, provides that, "[w]ith the exception of other remedies provided by statute, the remedies provided hereunder shall be the exclusive remedies available to teachers for wrongful termination."

---

[8] "Of course, there are certain restrictions on an employer's ability to discharge an employee at will[, none of which are present or applicable here]. See, e.g., DeRose v. Putnam [Mgmt.] Co., 398 Mass. 205, 208-210 (1986) (liability for discharge in violation of public policy); Fortune v. National Cash Register Co., 373 Mass. 96, 104-105 (1977) (obligation of good faith and fair dealing); G. L. c. 151B, § 4 (1986 ed.) (prohibition against discrimination in employment)." Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988).

We have previously addressed the question of how the statutory scheme contained in G. L. c. 71, §§ 41 et seq., applies when there are potentially contradictory provisions contained in the statute and a CBA that is binding on all the parties. In particular, we concluded that G. L. c. 71, § 42, provides the exclusive remedy for a public school teacher who claims to be aggrieved by his or her termination of employment irrespective of the provisions of any applicable CBA. Since the enactment of St. 1993, c. 71, the Education Reform Act of 1993, we have "consistently held that the source, authority, and scope of arbitration for terminated teachers derive from [G. L. c. 71,] § 42, not from contract -- regardless of the existence of terms of a collective bargaining agreement." Groton-Dunstable Regional Sch. Comm. v. Groton-Dunstable Educators Assn., 87 Mass. App. Ct. at 623.

The association argues that nothing in the controlling statutes prohibits the "arbitration of violations of negotiated evaluation procedures and other contract rights when a district non-renews or dismisses a teacher." The association relies on School Comm. of Hull v. Hull Teachers Assn., MTA/NEA, 69 Mass. App. Ct. 860 (2007), and School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753 (2003), for support of

its argument.  However, given the facts and legal issues that we consider here, both cases are inapposite.[9]

While the Education Reform Act of 1993 exempted then-existing CBAs the provisions of which were contrary to § 42, it also mandated that "[c]ollective bargaining agreements effective after the date of this act shall be subject to the provisions of said section[] [42]."  Groton-Dunstable Regional Sch. Comm. v. Groton-Dunstable Educators Assn., 87 Mass. App. Ct. at 623, quoting from St. 1993, c. 71, § 77.  The CBA and the evaluation instrument that the association relies upon as the basis for its arbitration demand were executed well after the Education Reform Act was enacted in 1993.

---

[9] In School Comm. of Hull, supra, a teacher grieved the school committee's decision not to renew her employment, claiming that the committee had violated the CBA by failing to follow the evaluation procedures set forth in the CBA.  The teacher had not attained professional teacher status, but she had worked for more than ninety days, and thus was entitled to the statutory due process rights conferred by G. L. c. 71, § 42, second par.  An arbitrator ordered her reinstated, and this court affirmed, concluding that the CBA provisions were consistent with the statutory due process rights conferred by § 42 as a prerequisite to nonrenewal of employment.  Here, in contrast, Suglia had worked for the district for less than ninety days, and thus was afforded no due process rights under § 42.  School Comm. of Pittsfield, supra, unlike the case at bar, did not concern a teacher's dismissal, but, rather, her involuntary transfer to another school district.  The court determined that the issue was governed exclusively by the CBA and not by statute.  Arbitration was therefore the appropriate remedy.

Moreover, the teacher here was an employee at will, had no statutory due process rights controlling his termination from employment, and had been terminated from employment before the association filed the grievance alleging violation of the CBA's evaluation requirements.  At the time that the association filed the grievance on behalf of the teacher, Suglia was no longer employed by the district.  He had been terminated pursuant to the provisions of § 42 and was no longer entitled to the benefits of the CBA.[10]  The exclusivity provision of § 42 applies here, and the association had no right to pursue arbitration on behalf of a terminated teacher who had worked for the district for less than ninety days.  Suglia was no longer an employee of the district and the association's remedy existed exclusively in § 42.  Accordingly, the Superior Court's judgment dated December 12, 2016, based on the court's order dated September 7, 2016, permanently staying the grievance arbitration proceeding commenced by the association before the DLR (Case No. ARB-16-5201), is affirmed.

So ordered.

---

[10] As we have noted, Suglia was terminated from his position on January 15, 2016, and the association filed the grievance on January 19, 2016.  The CBA applies to active members of the association or those members who have the right to grieve their termination.  Suglia does not fit into either category.  See School Comm. of Hull, supra; Groton-Dunstable Regional Sch. Comm., supra.