NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1160

MARINA VYRROS

vs.

CITY OF BOSTON & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Marina Vyrros began working at the East Boston High School as an "English as a second language" teacher during the 2012-2013 school year.  After a series of events led to the end of her employment in 2016, Vyrros filed a lawsuit alleging discrimination in violation of G. L. c. 151B, § 4 (16); retaliation in violation of G. L. c. 151B, § 4 (4), and G. L. c. 152, § 75B; and violations of procedural due process.  Some of those claims, including as relevant here Vyrros's allegation that the defendants violated her right to due process (count three of the first amended complaint), were resolved in favor of the defendants on cross motions for summary judgment.  Other

_____

[1] Phillip R. Brangiforte.

claims were tried to a jury, which returned verdicts in favor of the defendants. After a final judgment entered, Vyrros appealed. The sole issue on appeal concerns the entry of summary judgment for the defendants on Vyrros's due process claim. We agree with Vyrros that summary judgment should not have entered for the defendants on count three of the first amended complaint, and accordingly we vacate that portion of the judgment.

Background. We summarize the uncontested facts as follows, based on the summary judgment record. After working as a teacher in the district for the two previous school years, Vyrros applied for a long-term leave of absence on March 23, 2015. While waiting for approval, Vyrros used her available paid sick time. Her request for long-term leave was granted for the period between March 23, 2015, and June 30, 2015.[2]

Vyrros returned to work for the 2015-2016 school year. On November 2, 2015, the head of her department conducted an unannounced observation of one of her classes. The next day, the head of her department, along with members of the administrative team, returned to observe Vyrros's class. On November 4, 2015, Vyrros met with Phillip Brangiforte, the

_____

[2] Vyrros did not return to work during the 2014-2015 school year.

school's headmaster, and others[3] to discuss their observations. Vyrros left the meeting crying, left work early, and went to Boston Medical Center for treatment. Vyrros then applied for workers' compensation benefits. The intake form described her as suffering from anxiety, depression, and posttraumatic stress disorder (PTSD) triggered by the observations of her teaching by school administrators and the follow-up meeting.

On November 9, 2015, Vyrros sent an occupational injury report to Brangiforte which stated that Vyrros had suffered an occupational injury. She asked Brangiforte to sign the form and submit it to the workers' compensation office. Brangiforte did not sign the form and, consequently, Vyrros's claim was denied on November 12, 2015. Vyrros, who had not been to work since the November 4, 2015 meeting, continued to remain out of work and did not return to work after her workers' compensation claim was denied. On December 10, 2015, having exhausted her paid sick time, Vyrros sent an email message to the director of human capital operations for the Boston public schools, describing herself as "a teacher on medical leave" and asking if she was eligible to apply for benefits under the paid sick leave bank. Initially, she was told that she should be eligible, but later was told that she was ineligible because she was required to "be

---

[3] Vyrros's "peer assistant" and union representative were also present.

on an approved leave of absence in order to apply for [the] sick bank."

On January 11, 2016, Brangiforte sent Vyrros a letter stating that she had been absent without leave since November 6, 2015, and that if she did not report to work or receive a grant of a leave of absence by January 5, 2016, her failure to report to work would operate as a resignation. After Brangiforte was informed by another school administrator that the January 5, 2016, date for Vyrros to either return to work or be granted a leave of absence was incorrect, he sent a second letter to Vyrros, identical to the first in all respects except that it gave the date of January 26, 2016, by which Vyrros had to report to work or be granted a leave of absence.[4]

On January 14, 2016, before Vyrros received the second letter, she sent an email message to Brangiforte expressing confusion over the return-to-work date contained in the original letter and advising Brangiforte that she had filed a workers' compensation claim and her intention was to return to work in a modified position. She expressed concern about filing a leave of absence request where the city's lawyers and her workers' compensation lawyer were close to reaching an agreement that

---

[4] Although the second letter was also dated January 11, 2016, it obviously was sent at some point on or after January 13, 2016, the date Brangiforte was informed that the listed January 5, 2016, date was incorrect.

4

would allow her to return to work with some accommodations. That same day, Brangiforte sent an email message to Vyrros that her claim for workers' compensation did not excuse her from the normal leave of absence process and that she would need to correct the situation prior to January 26, 2016, by applying for leave and providing the necessary documentation signed by her treating physician. Vyrros applied for leave the next day but did not submit the required form from her physician by January 26, 2016. On January 22, 2016, the defendants sent Vyrros an email message reminding her to submit the appropriate documentation. On January 27, 2016, Brangiforte filed a "Personnel Action Request Form." The action taken was specified by a check mark in the box titled "TERMINATION/RETIREMENT." The reason for the action also was specified by a check mark, in the box for absence without leave (AWOL). The effective date of the termination was shown by a handwritten notation "1/26/16." Although the defendants claim that Brangiforte notified Vyrros of her AWOL status and the effective date of her resignation on January 27, 2016, nothing in the record supports an inference that Vyrros received any notice from the defendants regarding her employment status at any point after she received the email message on January 22, 2016.

On January 29, 2016, Vyrros sent an email message to the defendants containing a doctor's note dated November 5, 2015,

5

and which stated that Vyrros would be "unable to work for the remainder of the trimester, and should be able to return after the Holidays."  On February 29, 2016, Vyrros visited her doctor, who described her as being extremely stressed.

Discussion.  "Our review of a decision on a motion for summary judgment is de novo."  Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021).  "[I]f the 'pleadings, depositions, answers to interrogatories, and responses to requests for admission under [Mass. R. Civ. P. 36, 365 Mass. 795 (1974)], together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law,' then summary judgment shall be rendered forthwith."  Jenkins v. Bakst, 95 Mass. App. Ct. 654, 656 (2019), quoting Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "Summary judgment, when appropriate, may be rendered against the moving party."  Mass. R. Civ. P. 56 (c).

Vyrros contends that the defendants violated her State constitutional right to due process by terminating her employment without proper notice and by failing to follow their own AWOL policies.  The parties agree that when a teacher voluntarily resigns from employment, no due process is required.  The parties also agree that when the defendants terminate the employment of a public schoolteacher who served in the district

6

for the three previous consecutive school years -- a teacher with "professional teacher status," G. L. c. 71, § 41, -- they are required to follow the procedures outlined in G. L. c. 71, § 42 (section 42).

Those procedures are that a teacher employed for at least ninety days must be given written notice by the school administrators of an intent to dismiss, along with an explanation of the grounds for dismissal and documents relating to those grounds. G. L. c. 71, § 42, second par.[5] A teacher "may [then] seek review of a dismissal decision within thirty days after receiving notice of [their] dismissal by filing a petition for arbitration with the commissioner." Id. at fourth par. "At [any subsequent] arbitral hearing, the teacher and the school district may be represented by an attorney or other representative, present evidence, and call witnesses and the school district shall have the burden of proof"; in deciding whether the district met its burden, "the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards." Id. at fifth par.

---

[5] A teacher like Vyrros, with professional status, "shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure . . . to satisfy teacher performance standards . . . or other just cause." G. L. c. 71, § 42, third par. See School Dist. of Beverly v. Geller, 435 Mass. 223, 227 (2001).

7

Here, the judge denied Vyrros's motion for partial summary judgment on the defendants' liability under G. L. c. 152, § 75B, after concluding that there was a material issue of fact as to whether Vyrros resigned or was terminated. He then allowed in part the defendants' cross motion for summary judgment on all claims. As the judge explained, even if Vyrros was terminated, that decision was subject to arbitration within the statutory time frame of thirty days, and Vyrros failed to file a petition for arbitration within that time frame. As a result, the judge reasoned, the due process claim was time barred, and the defendants were entitled to summary judgment on count three of Vyrros's first amended complaint.

When reviewing the defendants' motion for summary judgment, we must view the facts in the light most favorable to Vyrros. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005). We accordingly assume that Vyrros was terminated and did not resign from her position. Similarly, we also assume for the limited purpose of discussing the defendants' motion for summary judgment that Vyrros did not receive proper notice of such action. Without sufficient notice, Vyrros argues she had no opportunity to file a timely petition for arbitration. Put another way, the thirty-day clock was not triggered.

Based on our review of the record, there is no evidence that the defendants gave Vyrros any warning that they intended

8

to dismiss her, as required under section 42. Instead, the letters sent by the defendants stated only that they intended to treat her failures, namely her failure to report to work if she had not received an approved leave of absence, as a resignation. Under section 42 the defendants were required to furnish Vyrros with "written notice of [their] intent to dismiss and with an explanation of the grounds for the dismissal in sufficient detail to permit the teacher to respond and documents relating to the grounds for dismissal" (emphasis added). G. L. c. 71, § 42, second par. Because they did not, Vyrros had no opportunity to respond or put the defendants to their burden of proving "inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure . . . to satisfy teacher performance standards . . . or other just cause." G. L. c. 71, § 42, third par. Thus, we agree with Vyrros that her procedural due process rights were violated as a matter of law and she is entitled to judgment in her favor on count three of the first amended complaint.

The defendants argue that summary judgment for Vyrros on count three of the first amended complaint is not warranted because of the existence of disputed issues of material fact relating to whether Vyrros's failure to return to work can be considered a voluntary resignation. In support of their position, they rely only on their own policies and procedures

9

that Vyrros's failure to report to work (if she had not received an approved leave of absence) was, in their interpretation, the equivalent of a resignation. Specifically, the defendants rely on a document called the "Superintendent's Circular" for the school year of 2015-2016, which described an employee's obligations when seeking an extension of approved leave:

> "The employee must request an extension from the Office of Human Capital prior to the expiration of the approved leave, this will include submission of medical documentation and the proper application. If the employee does not return from the leave of absence and does not request an extension, the employee will be deemed AWOL. AWOL employees may be deemed to have voluntarily resigned from their position or may be subject to termination."

The defendants' position fails for several reasons. First, even if this circular was somehow binding on teachers, an issue we need not address, the defendants have failed to show that this policy applied to Vyrros. Vyrros was not seeking to extend an approved leave, because as Brangiforte and the director of human capital operations explicitly told her, she was not on an approved leave at any point between the first day she failed to show up to work (November 5, 2015) and the final day when the defendants determined that she was AWOL. The policy also did not apply to Vyrros given the undisputed facts that she returned to work in the 2015-2016 school year and was not on an approved leave of absence when she failed to return to work on November 5, 2015.

Second, the defendants' claim that they can unilaterally determine that a teacher's lack of action is a communication tantamount to a resignation is without support in the case law or statutes. We are not persuaded by the cases cited by the defendants as they do not address the issue before us: whether a teacher's failure to perform essential duties, such as reporting to work, can constitute a resignation without the teacher communicating their intent to resign. Here, the record contains no support for the defendants' contention that Vyrros either explicitly or implicitly manifested her intent to resign. See Monahan v. Romney, 625 F.3d 42, 47 (1st Cir. 2010), cert. denied, 563 U.S. 976 (2011) (describing evidence that plaintiff voluntarily resigned). To the contrary, after Vyrros received a letter from the defendants that said they would consider her absence as a resignation, Vyrros immediately communicated directly with the defendants that it was her intent to return to work in a modified capacity. Contrast Lyons v. Sullivan, 602 F.2d 7, 10 (1st Cir.), cert. denied, 444 U.S. 876 (1979) (plaintiff took leave of absence then resigned). The failure to provide the defendants with requested medical paperwork did not demonstrate Vyrros's intent to resign, nor does it detract from Vyrros's explicit communication that she intended on returning to the school. Vyrros's lack of action alone simply did not communicate an intent to resign; more was required for the

11

defendants to meet their summary judgment burden. <u>Stone</u> v.

<u>University of Md. Med. Sys. Corp</u>., 855 F.2d 167, 173 (4th Cir.

1988) ("A public employer obviously cannot avoid its

constitutional obligation to provide due process by the simple

expedient of forcing involuntary 'resignations'").

To be clear, nothing in this decision limits the right of

the defendants, where otherwise permitted by law to do so, to

terminate a public schoolteacher's employment if they fail to

show up to work for a period of time. However, in order to do

so, they must comply with the requirements set forth in section

42. Had they done so in this case, Vyrros would have had thirty

days to file a petition seeking arbitration and, if she then

neglected to do so, we might reach a different result. Instead

the defendants deprived Vyrros of notice and the opportunity to

be heard, protected by the Massachusetts Declaration of Rights

and section 42, by unilaterally determining that she had

resigned.

For all these reasons the judgment in favor of the

defendants on count three of the first amended complaint is

vacated. That count is remanded for entry of a new judgment in

favor of Vyrros, and for a determination of remedy. In all

other respects, the judgment is affirmed.[6]

---

[6] Both parties requested that we tax the costs of the appeal
to the opposing party under Mass. R. A. P. 26 (a), as appearing

12

So ordered.

By the Court (Vuono, Rubin & Walsh, JJ.[7]),

Anne M. Thomas
Assistant Clerk

Entered: June 6, 2024.

---

in 481 Mass. 1655 (2019).  Costs in this case are taxed only as ordered by us because we are vacating only part of the judgment. See id. at (a) (4).  We hold that costs shall be taxed against the defendants because we are vacating only the part of the judgment that Vyrros requested.  We decline to address Vyrros's request for attorney's fees under 42 U.S.C. § 1988, because it does not rise to the level of appellate argument under Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

[7] The panelists are listed in order of seniority.